843 F.Supp. 1321 (1994)
Charles MARTIN, et al., Plaintiffs,
v.
Richard L. CONSTANCE, et al., Defendants.
No. 4:90CV00833 GFG.
United States District Court, E.D. Missouri, E.D.
February 10, 1994.
*1322 Kenneth Chackes, Missouri Protection & Advocacy Services, Ann B. Lever, Legal Services *1323 of East Missouri, St. Louis, MO, for plaintiffs.
John C. Garavaglia, St. Louis, MO, for Constance and Donaho.
Mary S. Tansey and Cynthia Harcourt-Hearring, Asst. Attys. Gen., Joann Leykam, Missouri Dept. of Mental Health, Jefferson City, MO, for defendants.

MEMORANDUM OPINION
GUNN, District Judge.
This matter is before the Court for disposition on the merits following a bench trial. Plaintiffs, developmentally disabled adults living in a group home owned and operated by the State of Missouri, brought this action to enjoin enforcement of a restrictive covenant which would preclude the continued operation of the group home. The home is located in the residential and historic neighborhood of Compton Heights in the City of St. Louis, Missouri. Defendants are owners of real estate in Compton Heights, and the Compton Heights Neighborhood Association. Joined as defendants necessary for complete relief are the Governor of the State of Missouri, the Director of the Missouri Department of Mental Health and the Superintendent of the St. Louis Developmental Disabilities Treatment Centers. Plaintiffs seek declaratory and injunctive relief under the Fair Housing Act as amended in 1988, 42 U.S.C. § 3604(f), and under 42 U.S.C. § 1983.

I. Background
Compton Heights, a designated historic neighborhood, is subject to a restrictive covenant duly recorded in 1893 which provides in relevant part as follows:
But one building shall be ... placed upon each of said lots and such building shall never be used or occupied for any purpose except for that of a private residence exclusively nor shall any part or portion thereof ever be used or occupied except solely as a residence, nor shall such building be arranged or ever used or occupied as flats, nor shall said lots or any part thereof ever be used or occupied for trade or business of any kind.
In December 1989 the State began looking into purchasing a certain dwelling in Compton Heights to use as a group home for six mentally retarded/developmentally handicapped adult males and two resident supervisors. Upon learning of the State's intentions, residents of the neighborhood wrote letters to various state officials to voice opposition to the plan. A public meeting was held and it was decided to file an action in state court to seek enforcement of the restrictive covenant to prevent the State from operating the group home. On January 30, 1990, the private defendants filed such an action in state court.
On April 2, 1990, while the action was pending, the State purchased the property, and on April 10, 1990, plaintiffs moved in. On April 18, 1990, plaintiffs moved to intervene in the state-court action. When the motion was denied, plaintiffs filed this action as well as a request for a preliminary injunction enjoining prosecution of the state-court action. On May 23, 1990, following a hearing, this Court granted the preliminary injunction.[1] Trial on plaintiffs' FHA and Section 1983 claims was held on June 6 and 7, 1990.
At the hearing and trial, plaintiffs presented evidence that the group home operates as a functional family. (Tr. 347-48). The inhabitants are screened to assure their suitability for community living and there is little *1324 turnover in the makeup of the group. Plaintiffs also presented evidence that the State was committed to preserving the historical significance of the house and would not change its exterior appearance.
Plaintiffs' expert on community integration of the mentally retarded testified that numerous studies on the effect of a group home for developmentally disabled adults on a residential neighborhood all indicate that there is no adverse impact on real estate values, neighborhood stability or crime rates. (Tr. 349-54).
The private defendants presented evidence that the restrictive covenant was on several occasions enforced against businesses. Several Compton Heights residents testified that they opposed the group home because they did not want a rooming house or business in their neighborhood. In addition they expressed concern that the State, as a property owner, was not subject to the same restrictions as private owners and may not maintain the property.

II. FHA Claim
Title 42 U.S.C.A. § 3604(f) (Supp.1993) provides in relevant part that it shall be unlawful
(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of 
* * * * * *
(B) a person residing in or intending to reside in that dwelling after it is so sold ... or made available.
* * * * * *
(2) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling ... because of a handicap of 
* * * * * *
(B) a person residing in or intending to reside in that dwelling after it is so sold ... or made available.
* * * * * *
(3) For purposes of this subsection, discrimination includes 
* * * * * *
(B) a refusal to make reasonable accommodations in rules, policies, [or] practices ... when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.

A. Standing
The private defendants argue that plaintiffs do not have standing to bring this action, because plaintiffs' choice of residence would not be affected by enforcement of the restrictive covenant. Their argument has a twofold premise: (1) plaintiffs did not choose to live in this particular home, rather the State made the decision for them, and (2) there are group homes in other neighborhoods in which plaintiffs could live.
The Court concludes that this assertion is without merit. Based on the evidence presented at the hearing and trial, the Court finds that plaintiffs choose to remain in the group home and concludes that the threat of being forced to move from their current living situation confers them with standing. See O'Neal by Boyd v. Alabama Dep't of Pub. Health, 826 F.Supp. 1368, 1371-72 (M.D.Ala.1993) (resident of assisted living facility had standing to sue state under FHA, though no action was taken against her, where after state revoked facility's license because of her presence, manager took steps towards evicting her); Bangerter v. Orem City Corp., 797 F.Supp. 918, 920-21 (D.Utah 1992) (resident of group home for mentally retarded adults has standing to sue city under FHA to challenge allegedly discriminatory statute which would restrict his ability to live in this group home).
Plaintiffs' standing is evident. The FHA itself defines "aggrieved person" as a person who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice which is about to occur." 42 U.S.C. § 3602(i).[2]

*1325 B. Discriminatory Intent

A plaintiff can show a violation of section 3604(f) by one of two methods. The first method is showing discriminatory intent on the part of the defendants. Plaintiffs evidence of discriminatory intent need not show that the handicapped status of the intended inhabitants was the sole factor of the defendant's decision to seek enforcement of the restrictive covenant, only that it was a motivating factor. See Village of Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252, 265-66, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1977). "The Court must conduct a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." Id. at 266, 97 S.Ct. at 564.
Based upon the evidence, the Court finds that the status of the intended residents of the home was a motivating factor in the private defendants' attempt to enforce the restrictive covenant. It is, at least in part, the presence of developmentally handicapped persons to which these defendants object. The Court accords little credibility to other reasons put forward by the private defendants for seeking to enforce the restrictive covenant. The group home would be more closely akin to a family residence, than a business or boarding house with transient occupants. In fact, under Missouri law, a group home has been held not to violate the terms of a restrictive covenant prohibiting use of lots for a purpose "other than that of an exclusive family residence for one family." See Maull v. Community Living for the Handicapped, 813 S.W.2d 90 (Mo.Ct.App. 1991).[3]
The private defendants put forward no evidence to support the asserted fear that the State would not maintain the property. The inference of a discriminatory motive is strongly supported by the fact that although the State has made reasonable assurances to address the stated concerns of the residents, they continue to oppose the group home.
The Court concludes that plaintiffs are entitled to an injunction enjoining the enforcement of the restrictive covenant to preclude the operation of the group home in which they live.

C. Discriminatory Effect
Although the Court concludes that plaintiffs have proved a violation of the FHA by showing discriminatory intent, the Court will consider whether plaintiffs have also succeeded on the merits by proving discriminatory effect. Under this method of establishing a violation of section 3604, plaintiffs "need prove no more than that the conduct of defendants actually or predictably resulted in ... discrimination; in other words, that it has a discriminatory effect.... Effect, and not motivation, is the touchstone." United States v. City of Black Jack, 508 F.2d 1179, 1184-85 (8th Cir.1974), cert. denied, 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975).
The Court concludes that this is an appropriate case for application of the discriminatory effect (sometimes called the disparate impact) analysis, and that under this analysis plaintiffs have established a violation of section 3604(f). See, e.g., Stewart B. McKinney Found., Inc. v. Town Plan & Zoning Comm'n, 790 F.Supp. 1197, 1216-19 (D.Conn. 1992) (disparate impact analysis applied to claim by nonprofit organization that requirement that it obtain special exception for its intended use of residence as home for HIV-infected persons violated section 3604(f)); United States v. Scott, 788 F.Supp. 1555 (D.Kan.1992) (subdivision residents violated FHA by seeking judicial enforcement of facially neutral restrictive covenant to prevent sale of house to operator of group homes for disabled individuals, though there was no showing of residents' bad faith or malice towards handicapped persons).
Reference to the legislative history of the 1988 amendments to the FHA confirms this conclusion. House Report No. 100-711, 100th Cong., 2d Sess. 24, reprinted in 1988 U.S.C.A.N. 2173, 2184-85, states:
[Section 3604(f)(2)] is intended to prohibit restrictive covenants ... which have the effect of excluding, for example, congregate *1326 living arrangements for persons with handicaps.
* * * * * *
Another method of making housing unavailable to people with disabilities has been the application or enforcement of otherwise neutral rules and regulations on ... land use in a manner which discriminates against people with disabilities. Such determination often results from false ... assumptions about the needs of handicapped people, as well as unfounded fears of difficulties about the problems that their tenancies may pose. These and similar practices would be prohibited.[4]
The private defendants' argument that the statute only reaches special restrictive covenants that specifically prohibit the sale or rental of a dwelling to handicapped individuals is thus without merit. The Court also rejects these defendants' argument that prohibiting this group home from operating would have no discriminatory effect on plaintiffs or handicapped persons in general, because there are other group homes in Missouri. Defendants' reliance on Familystyle v. City of St. Paul, 923 F.2d 91 (8th Cir.1991) (state and city requirements that group homes for mentally ill not be clustered furthered goal of integrating mentally ill into society and did not have discriminatory effect), is misplaced.

D. Refusal to Make Reasonable Accommodation
The Court concludes that the private defendants discriminated against plaintiffs under the definition of "discrimination" set forth in section 3604(f)(3)(B). Even if there was a consistent policy and practice of enforcing the restrictive covenant against perceived violations, the Court finds that under the facts of this case the attempt to enforce the covenant constituted a refusal to make a "reasonable accommodation" necessary to afford plaintiffs an equal opportunity to use and enjoy a dwelling.
A reasonable accommodation would have been not to seek enforcement of the covenant. Such an accommodation would not impose an undue financial or administrative burden on the private defendants, nor would it undermine the basic purpose behind the practice of enforcement, namely, to maintain the residential nature of the neighborhood. See, e.g., Oxford House, Inc. v. Township of Cherry Hill, 799 F.Supp. 450, 461-63 (D.N.J. 1992) (municipality's refusal to grant zoning approval to group home for handicapped persons in single family residential zone violates reasonable accommodation provision of FHA).

III. Section 1983 Claim
The private defendants argue that plaintiffs failed to establish an essential element of their section 1983 claim, namely that the private defendants acted "under color of state law." Plaintiffs, relying on Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), argue that the private defendants' resort to the state court to enforce the restrictive covenant constitutes state action. In Shelley, the Supreme Court found state action where private parties resorted to the state courts to enforce a facially discriminatory restrictive covenant. Plaintiffs argue that Shelley encompasses judicial action to enforce a facially neutral covenant in a discriminatory manner.
This position was rejected in Casa Marie, Inc. v. Superior Court, 988 F.2d 252, 259-60 (1st Cir.1993). The Court agrees with this holding in Casa Marie, at least where, as here, there has been no state court decision on the matter.
Plaintiffs argue in the alternative that state action arises from the fact that the covenant the private defendants seek to enforce is recorded in accordance with state regulations. No case law is cited in support of this position, and this Court concludes that it is without merit.

*1327 JUDGMENT

Pursuant to the memorandum opinion filed herein this day,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment is entered in favor of plaintiffs on their claim under the Fair Housing Act as amended in 1988, 42 U.S.C. § 3604(f). The private defendants are enjoined from attempting to enforce the restrictive covenant to prevent the group home in question from operating.
IT IS FURTHER ORDERED that judgment is entered in favor of the private defendants on plaintiffs' claim under 42 U.S.C. § 1983.
NOTES
[1] The stay was not barred by the Anti-Injunction Act, 28 U.S.C. 2283. Claims under 42 U.S.C. § 1983 are an exception to the Act. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Upon application of the analysis set forth in Mitchum v. Foster, id. at 237-38, 92 S.Ct. at 2159, the Court concludes that the FHA is also an exception.

The Court notes that after issuance of the stay in this case, the First Circuit held in Casa Marie, Inc. v. Superior Court, 988 F.2d 252 (1st Cir. 1993), that the owners and residents of a facility for the handicapped, who were parties in a state court action to enforce a restrictive covenant against the facility, were not entitled to a federal injunction to enjoin execution of the state court judgment against them. This Court finds the decision unpersuasive, at least in the context of a stay of a pending state court action at the request of parties who were not permitted to intervene in that action.
[2] The Court rejects the private defendants' argument that the FHA is not applicable to them because they are not sellers or renters.
[3] See also Mo.Ann.Stat. § 89.020.2 (Vernon Supp.1993).
[4] HUD's regulations on discriminatory conduct under the FHA prohibit "enforcing covenants ... which preclude the sale or rental of a dwelling to any person because of ... a handicap." 24 C.F.R. 100.80(b)(3) (1993).