OPINION OF THE COURT
Alan D. Oshrin, J.
This CPLR 6301 application for a preliminary injunction enjoining Joseph Rios and Benilda Rios from selling or otherwise transferring their condominium unit located at 182 Artist Lake Drive, Middle Island, to Concern for Mental Health, Inc., and enjoining Concern for Mental Health, Inc. from purchasing such unit or any other unit at Artist Lake Condominium is determined as provided herein.
The plaintiff is the board of managers of Artist Lake Condominium. It is charged with the responsibility of enforcing the rules and regulations relating to the facility. The Artist Lake Condominium (Artist Lake) is located at Middle Island, New York. The entire community is comprised of three separate *383 condominiums, the plaintiff and two others (including Fairview Condominium Complex) which are not parties.
The defendant is a not-for-profit corporation which provides assistance in placing and supervising persons who are mentally disabled in noninstitutional settings. Condominium unit 182, which is the subject of this action, and another unit number 37 have already been sold to the defendant. The defendant is also presently under contract to purchase two additional units and intends to purchase three condominium units at the Fairview Condominium Complex, which is not a party to this action, but has appeared as amicus curiae on June 19th and was afforded the opportunity to file papers with the court.
The plaintiff contends that the contracts of purchase cannot be consummated because they are contrary to the portion of the declaration of condominium and the declaration of covenants (both recorded documents) which restrict occupancy to "one family occupancy” which is defined as "occupancy by no more than four adults all related to one another”. The plaintiff contends, therefore, that the sale to Concern for Mental Health for use and occupancy by unrelated mentally handicapped adults would be violative of the provisions of the condominium documents and properly the subject of injunctive relief (discussing section 339-j of the Real Property Law).
In opposing the motion, Concern for Mental Health argues on the strength of Crane Neck Assn. v New York City/ Long Is. County Servs. Group (61 NY2d 154 [1984], appeal dismissed and cert denied 469 US 804 [1984]) and the Federal Fair Housing Amendments Act of 1988 (42 USC §§ 3602-3631) that the plaintiff cannot demonstrate a likelihood of success on the merits and an entitlement to injunctive relief. The Court in Crane Neck Assn. in considering a restrictive covenant as to single-family dwelling construction held that "even if use of the property violates the restrictive covenant, that covenant cannot be equitably enforced because to do so would contravene a long-standing public policy favoring the establishment of such residences for the mentally disabled.” (Supra, at 160.) The Court also ruled that there is a legislative intent (section 41.34 of the Mental Hygiene Law) "to remove barriers based on 'family’ restrictions, whether contained in local laws, ordinances or private covenants”. (Supra, at 164.)
The Crane Neck Assn. Court concluded that: "Here the State’s interest in protecting the welfare of mentally and developmentally disabled individuals is clearly an important public purpose, and the means used to select the sites for com *384 munity residences are reasonable and appropriate to effectuate the State’s program of providing the most effective care in the least restrictive environment. In such circumstances, appellants’ private contract rights may not override State policy.” (Supra, at 167.)
With respect to the Federal Fair Housing Amendments Act of 1988 (42 USC §§ 3602-3631), Concern for Mental Health argues that the United States Congress enacted legislation that prohibits discriminatory zoning practices as well as private actions aimed at making housing unavailable to persons with handicaps; that the prospective individuals who would be living in the subject unit qualify under this action by virtue of having a "physical or mental impairment which substantially limits one or more of such person’s major life activities” (42 USC § 3602 [h]); that the bylaws of Artist Lake clearly violate the rights of mentally disadvantaged individuals by prohibiting any unrelated people from sharing a home in the condominium complex and, therefore, that the plaintiff is acting in contravention of Federal law as well as State law.
In reply the plaintiff argues that under the Padavan Law, adopted as Mental Hygiene Law § 41.34, a " 'Community residential facility for the disabled’ means a supportive living facility with four to fourteen residents or a supervised living facility subject to licensure by the office of mental health or the office of mental retardation and developmental disabilities which provides a residence for up to fourteen mentally disabled persons, including residential treatment facilities for children and youth.” (Mental Hygiene Law § 41.34 [a] [1].) The plaintiff further argues that Concern for Mental Health by purchasing four units, each to house for example, two individuals, has effectively circumvented the public notice and public hearing requirement of Mental Hygiene Law § 41.34 (c) depriving the community of the opportunity to participate in site selection and to protect itself from saturation and the altering of the nature and character of the area. The plaintiff also urges that a condominium community must be viewed differently from a community of separately owned detached houses on distinct parcels of land, and that the condominium community must be considered one facility for purpose of the Padavan Law.
With respect to this argument, Concern for Mental Health argues that each condominium unit is categorized as a supportive living community residence under section 586 (d) and section 586.3 (c) (4) of chapter XIII, Office of Mental Health *385 Regulations (14 NYCRR part 586), does not constitute "facilities” in the regulated category (§ 586.1 [d]), is not community residential facilities for the disabled as defined by section 41.34 (a) (1) of the Mental Hygiene Law, is not subject to the notice and hearing requirements of the Padavan Law, and that the type of residence contemplated by the statute envisions a 24-hour around the clock supervised, therapeutic program housing 4 to 14 persons. Concern for Mental Health also argues that each condominium unit is intended to house either one or two persons; that each unit operates independently of the others; that the residents of one unit have no programming relationship to each other, and that these separate condominium units cannot be viewed as a single site residential facility for the housing of mentally disabled persons.
With respect to the Federal Fair Housing Amendments Act of 1988 Concern for Mental Health further argues on the strength of Martin v Constance (843 F Supp 1321 [1994]) and United States v Scott (788 F Supp 1555 [1992]) that the statutory language of 42 USC § 3604 (f) (1) "otherwise make available or deny” has been broadly construed to include all practices which make unavailable or deny dwellings on prohibited grounds; that given its breadth, the phrase would reasonably encompass the act of enforcing a neutral covenant through the judicial system for the purpose of denying equal housing opportunities to disabled individuals and that the statute is not limited to special restrictive covenants that specifically prohibit the sale or rental of a dwelling to handicapped individuals.
Finally, in further reply the plaintiff argues that a supportive living facility not involving on-site 24-hour supervision falls within the plain meaning of section 41.34 of the Mental Hygiene Law, that the real issue in this case is the Padavan Law 4 to 14 person limitation; that the Artist Lake Condominium consists of garden apartments which in the physical sense are multiple-family dwellings, and that to permit Concern for Mental Health to purchase any number of units, each housing less than four individuals, creating the concentration and saturation problem which the Padavan Law site selection procedure sought to prevent, would be violative of both the spirit and intent of the Padavan Law.
To prevail on an application for preliminary injunctive relief the plaintiff has the burden of clearly establishing the likelihood of ultimate success on the merits, irreparable injury absent granting of preliminary injunction and that the balanc *386 ing of equities lies in favor of the movant (see, Fabrege Intl. v Di Pino, 109 AD2d 235 [1985]; Barone v Frie, 99 AD2d 129 [1984]). The plaintiff’s right to a preliminary injunction must be certain as to the law and facts, with the burden of establishing such an undisputed right resting upon the plaintiff (see, Buegler v Walsh, 111 AD2d 206 [1985], lv dismissed 65 NY2d 1012 [1985]). To meet this burden a plaintiff must submit affidavits and other proof supplying evidentiary detail (see, Armbruster v Gipp, 103 AD2d 1014 [1984]).
The court shall first address the enforceability of the "one family occupancy” restrictive covenant. In light of the State statutory law (see, Mental Hygiene Law § 41.34); State case law (see, Crane Neck Assn. v New York City/ Long Is. County Servs. Group, 61 NY2d 154, supra); Federal statutory law (42 USC §§ 3602-3631); and Federal case law (see, Martin v Constance, 843 F Supp 1321, supra; United States v Scott, 788 F Supp 1555, supra) discussed above the court concludes that the restrictive covenant, although neutral and not specific, cannot be equitably enforced so as to prohibit the sale of a condominium unit to an entity such as Concern for Mental Health for use and occupancy by mentally or developmentally disabled or handicapped individuals. The restrictive covenant, therefore, does not present a bar to the subject conveyances.
The court shall next address the applicability of the Padavan Law. As noted above a "community residential facility for the disabled” means a supportive living facility with 4 to 14 residents or a supervised living facility (Mental Hygiene Law § 41.34 [a] [1]). A "supportive living facility” is defined as "a community residence providing practice in independent living under supervision but not providing staff on-site on a 24-hour per day basis” (Mental Hygiene Law § 1.03 [28-b]; 14 NYCRR 586.3 [c] [4]). This is seemingly the type of residence that Concern for Mental Health intends to establish in the condominium units and the Padavan Law, by its plain language, applies. Concern for Mental Health’s interpretation of 14 NYCRR 586.1 (d) as excluding a "supportive living facility” as a facility regulated by part 586 (operation of community residences) is belied by a plain reading of the language. Section 586.1 (d) clearly infers that in addition to the four types of community residences — "halfway house”, "service-enriched single room occupancy residence”, "supervised living facility” and "supportive living facility” — which are defined in section 586.3 (c) (1), (2), (3) and (4) which are regulated by part 586 there are additional residential settings of lesser restrictive *387 ness than community residences, but which are not independent living, and it is these other settings which do not constitute "facilities” intended to be regulated by part 586. Further, Concern for Mental Health’s suggestion that the type of residence contemplated by the Padavan Law envisions a 24-hour around the clock supervised therapeutic program housing 4 to 14 persons is without statutory or regulatory support and is directly contrary to the definition of "community residential facility for the disabled” found at section 41.34 (a) (1) of the Mental Hygiene Law and the definition of "supportive living facility” found at section 1.03 (28-b) of the Mental Hygiene Law.
The court acknowledges that in its final reply papers Concern for Mental Health argues that its intended residences are "supported” housing as opposed to a "supportive living facility” and are outside the scope of the Padavan Law and part 586. The court finds, however, that inasmuch as Concern for Mental Health has made no attempt to advise this court as to the type of individual who will reside in these units in terms of independent living skills and need for supervision and has made no attempt to advise this court as to the nature and level of supervision which is involved with "supported” housing and a "supportive living facility”, Concern for Mental Health has not persuaded the court of the inapplicability of the Padavan Law to the proposed residences. The court finds, therefore, that the Padavan Law applies to the type of residence that Concern for Mental Health intends to establish in the condominium units.
Having determined that the Padavan Law applies, the court will now address the issue of the number of residents involved and whether the notice and hearing provisions need be invoked. Concern for Mental Health represents that of the Artist Lake units two persons will be housed at unit 182, two persons at unit 37, one person at unit 142 and one person at unit 84. Concern for Mental Health represents that of the Fair-view units there will be two persons housed in each of three units. As discussed above the plaintiff urges that this court should view a condominium community differently from a community of separately owned detached houses on distinct parcels of land and that this court should consider the condominium community as one "community residential facility” for purposes of the Padavan Law notice requirement. The plaintiff describes Artist Lake Condominium as consisting of 320 garden apartments contained in 21 buildings, with each building containing approximately 15 homes. Fairview Condominium is described as consisting of some 374 units.
*388 At the outset the court observes that one court has rejected a similar argument in a proceeding where three condominium units were to be purchased, each unit to house no more than three individuals. The court ruling that with no evidence of a fourth resident in any one unit, the proposed housing did not qualify as a "community residential facility for the disabled” under section 41.34 of the Mental Hygiene Law and that the plaintiff failed to establish the likelihood of success on the merits of such claim and the further claim that compliance with the site selection notice and hearing process was required (City of Peekskill v Rehabilitation Support Servs., 806 F Supp 1147 [1992]). Further, inasmuch as a condominium unit is owned in fee simple absolute (Real Property Law § 339-e [16]) constitutes real property (Real Property Law § 339-g), with the unit owner entitled to exclusive ownership and possession of the unit (Real Property Law § 339-h), this court can find no basis to distinguish attached multiple condominium units from the type of attached but separately owned private houses that are found in various locations throughout the five boroughs of the City of New York, which even the plaintiff could not suggest would constitute a predicate for a single "community residential facility”.
Moreover, given that the Artist Lake Condominium consists of 320 units contained in 21 buildings, with each building containing approximately 15 homes, it strains reason to view Artist Lake Condominium as one "community residential facility” housing four or more residents thereby triggering the notice and hearing requirements of the Padavan Law. Accordingly, the court finds that each condominium unit constitutes a "community residential facility for the disabled”; that each unit is to contain fewer than four residents, and that by the plain language of section 41.34 of the Mental Hygiene Law the notice and hearing provisions do not apply (see, Matter of Shannon v Introne, 80 AD2d 834 [1981], affd 53 NY2d 929 [1981]).
The court having found that the plaintiff cannot clearly establish the likelihood of success on the merits as to the enforceability of the restrictive covenant; that a community residential facility for the disabled was to house four or more residents, or that the notice and hearing requirements of the Padavan Law were applicable, the court need not address the other components of the test for preliminary injunctive relief.
*389 Accordingly, the plaintiffs CPLR 6301 application for a preliminary injunction enjoining the Concern for Mental Health from purchasing any other condominium unit at Artist Lake Condominium is denied.