Albert GITTLEMAN, Plaintiff,

v.

WOODHAVEN CONDOMINIUM ASSO-
CIATION, INC. and Maintenance
Management, Inc., Defendants.

No. 97–Civ.–1003 (WGB).

United States District Court,
D. New Jersey.

Aug. 12, 1997.

Anthony J. Brady, Voorhees, NJ, for
Plaintiff, Albert Gittleman.

Michael Patrick Carroll, Maintenance
Management, Inc., Morristown, NJ, for De-
fendant, Maintenance Management, Inc.

Michael D. O'Shea, West Caldwell, NJ, for
Defendant, Woodhaven Condominium Associ-
ation, Inc.

*OPINION*

BASSLER, District Judge:

Defendant, Woodhaven Condominium As-
sociation, Inc. (the "Association"), moves for
summary judgment dismissing the Complaint
in this action. The Plaintiff, Albert Gittle-
man ("Mr.Gittleman"), has not submitted op-
position to this motion despite the Court's
invitation to do so. (*See* Letter Dated July
22, 1997 From William G. Bassler, U.S.D.J.
to Anthony J. Brady, Esq., Plaintiff's coun-
sel). The Court's jurisdiction is pursuant to
42 U.S.C. § 3613(a) ("Fair Housing Amend-
ments Act" or "FHAA"), 28 U.S.C. § 1331
(federal question) and 28 U.S.C. § 1367 (pen-
dent jurisdiction). For the reasons set forth
below, the Court **denies** the Association's
motion.

## I. BACKGROUND

The Association is a nonprofit corporation organized under New Jersey law for the administration and management of the Woodhaven Condominium (the "Condominium") pursuant to the New Jersey Condominium Act (the "Condominium Act"), N.J.S.A. 46:8B–1 et seq. (Complaint ¶ 2). Mr. Gittleman is a unit owner in the Condominium. (Complaint ¶ 2). The Condominium contains 120 units. (Master Deed at 2). Mr. Gittleman allegedly suffers from a handicap as that term is defined in the FHAA and the New Jersey Law Against Discrimination ("NJLAD").[1]

In January 1997, Mr. Gittleman requested exclusive use of a parking space to accommodate his alleged handicap. (Defendant's Brief at 1); (Complaint ¶ 5). The Association rejected Mr. Gittleman's request. (Complaint ¶ 6).

According to the unsworn assertions of the Association's counsel, the Association's refusal was based in reliance upon Paragraph 6(c) of the Condominium's Master Deed, which provides, in pertinent part:

> The parking spaces within the lands described in Paragraph 1 of this Master Deed shall constitute common elements for the non-exclusive use of the unit owners.

(Master Deed for Woodhaven, A Condominium, Exhibit A to Defendant's Moving Brief, at 8 ¶ 6(c)).

The Association purportedly took the position[2] that it could not act on Mr. Gittleman's request without making a material amendment to Paragraph 6(c) of the Master Deed. Material amendments to the Master Deed require prior approval by unit owners representing at least two-thirds of the votes entitled to be cast. (Master Deed Paragraph 18). Under the terms of the Master Deed, amendments affecting "rights to use the common areas" are material amendments that require a two-thirds vote of approval. (Id.) Consistent with this position, the Association purportedly placed a resolution before the whole membership to amend the Master Deed and allow for assigned parking on an exclusive basis. (Defendant's Brief at 1). This resolution did not carry-the requisite two-thirds vote, according to Defendant's counsel.

Mr. Gittleman filed this suit on February 24, 1997 claiming he is entitled to relief under the FHAA[3] and the NJLAD. The Association filed an Answer and then this motion for summary judgment. Maintenance Management, Inc. has not Answered the Complaint or joined in this motion for summary judgment.

Because the Association's motion deals solely with Mr. Gittleman's FHAA claim, the Court will not address the viability of Mr. Gittleman's NJLAD claim in this Opinion. Furthermore, the Court expresses no opinion today as to the viability of the claims against Maintenance Management, Inc.

## II. DISCUSSION

### A. Standard on a Motion for Summary Judgment

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

---

1. The statutory definitions of "disability" under the Americans With Disabilities Act ("ADA") and "handicap" under the NJLAD and FHAA all differ somewhat. E.g., Gimello v. Agency Rent–A–Car Systems, 250 N.J.Super. 338, 358, 594 A.2d 264 (App.Div.1991) (comparing "disability" under ADA with "handicap" under NJLAD); 42 U.S.C. § 3602(h) ("handicap" defined under FHAA). The Complaint improperly pleads that Mr. Gittleman suffers from a "disability" under the LAD and the FHAA, as opposed to a "handicap" as is required under those statutes. (Complaint ¶ 2). For the purposes of this motion, the Court will assume that the Complaint alleges that Mr. Gittleman suffers from a "handicap" as defined in the LAD and the FHAA.

2. The Court notes that the Association has neglected to support this aspect of its summary judgment motion with anything other than the unsworn assertions of its counsel.

3. An aggrieved party need not exhaust administrative remedies before bringing an action under the FHAA in federal court. See 42 U.S.C. § 3613(a)(2); Ward v. Harte, 794 F.Supp. 109 (S.D.N.Y.1992) (plaintiffs need not exhaust administrative remedies before filing suit under the FHAA).

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Whether a fact is material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue involving a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1219 n. 3 (3d Cir. 1988), *cert. denied,* 490 U.S. 1098, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989).

The moving party has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Where the moving party satisfies this requirement, the burden shifts to the nonmoving party to present evidence that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. Once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Federal Rule of Civil Procedure 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor, *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11, and not just "some metaphysical doubt as to material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In determining whether any genuine issues of material fact exist, the Court must resolve "all inferences, doubts, and issues of credibility ... against the moving party." *Meyer v. Riegel Products Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dism'd,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984) (*citing Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972)).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex,* 477 U.S. 317, 322–

23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a party may not merely restate the allegations of his complaint. *Farmer v. Carlson,* 685 F.Supp. 1335, 1339 (M.D.Pa. 1988). Moreover, a party cannot rely upon self-serving conclusions, unsupported by specific facts in the record. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. A non-moving party must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the party fails to provide such evidence, then he is not entitled to a trial and the moving-party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(e).

In deciding a summary judgment motion, however, the Court's role is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. If the party opposing summary judgment has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the Court cannot credit the movant's version of events, even if the quantity of the movant's evidence far outweighs that of its opponent. *Big Apple BMW v. BMW of North America,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

When a case turns on credibility determinations, summary judgment is inappropriate. *Coolspring Stone Supply, Inc. v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3d Cir.1993). Furthermore, "[i]ssues of knowledge and intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties." *Id.* (quoting *Riehl v. Travelers Ins. Co.,* 772 F.2d 19, 23 (3d Cir. 1985)).

## B. *FHAA Claim* [4]

The FHAA was enacted in 1988 to extend the principle of equal opportunity in housing

---

4. The Court assumes, for the purposes of this motion only, that Mr. Gittleman suffers from a

handicap entitling him to the protection of the FHAA and further that this handicap would enti-

to, among others, those with handicaps. *See Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 333 (2d Cir.1995) (citing H.R.Rep. No. 711, 100th Cong., 2d Sess. (1988) U.S.Code Cong. & Admin.News 2173). Pursuant to 42 U.S.C. § 3604(f)(2)(A), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person." Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

The federal regulations promulgated by the United States Department of Housing and Urban Development ("HUD") contain an example of a reasonable accommodation that is particularly relevant to this case:

> Progress Gardens is a 300 unit apartment complex with 450 parking spaces which are available to tenants and guests of Progress Gardens on a first come first served basis. John applies for housing in Progress Gardens. John is mobility impaired and is unable to walk more than a short distance and therefore requests that a parking space near his unit be reserved for him so he will not have to walk very far to get to his apartment. It is a violation ... for the owner or manager to refuse to make this accommodation. Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportunity to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances.

24 C.F.R. § 100.204(b), *quoted in Shapiro v. Cadman Towers, Inc.,* 844 F.Supp. 116, 125 (E.D.N.Y.1994), *aff'd,* 51 F.3d 328 (2d Cir. 1995).

Were this a simple case of a tenant in a multi-unit building seeking accommodation from a landlord-owner or manager, there would be little question that Mr. Gittleman, on the facts alleged, would be entitled to relief given the striking factual similarity of his case to the example given in the federal regulations. *See, e.g., Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 107, 99 S.Ct. 1601, 1611–12, 60 L.Ed.2d 66 (1979) (HUD's interpretation of federal housing law entitled to "considerable deference"); *Jankowski Lee & Associates v. Cisneros,* 91 F.3d 891 (7th Cir.1996) (apartment building manager, corporation that owned building, and managing partner of building liable under FHAA for failure to accommodate disabled tenant by providing adequate handicapped parking); *see also Shapiro v. Cadman Towers, Inc.,* 844 F.Supp. 116, 123 (E.D.N.Y.1994) ("defendants' first come first served policy is a rule policy or practice within the meaning of the FHAA" and "indoor parking is part of the services and facilities provided at plaintiff's building"), *aff'd,* 51 F.3d 328 (2d Cir.1995); *cf. Martinez v. Woodmar IV Condominiums Homeowners Association, Inc.,* 189 Ariz. 206, 941 P.2d 218 (1997) (condominium association occupies status similar to that of landlord and thus has tort duty under Arizona common law to maintain safety of common areas).

This case is complicated by the fact that the parking spaces are owned by the Condominium unit owners as tenants in common. The Association argues that it is powerless to provide Mr. Gittleman with exclusive use of a parking space under these circumstances. The Master Deed, the Association points out, provides that parking spaces constitute common elements for the non-exclusive use of the unit owners. The Association argues that assigning Mr. Gittleman an exclusive parking space would alter the other tenants' rights to use the common areas, and therefore would require a material amendment to the Master Deed and approval by at least two-thirds of the unit owners. (Master Deed Paragraph 18). The Association further ar-

---

tle him to a parking spot as a reasonable accommodation. The burden of proving this handicap, of course, remains with Mr. Gittleman. *E.g.,*

*Herron v. Blackwell,* 908 F.2d 864 (11th Cir. 1990) (plaintiff bears burden of proving membership in protected class).

gues that, under New Jersey law, it is forbidden from taking any action that would diminish the "proportionate undivided interest" each unit owner holds in the common elements. *See* N.J.S.A. 46:8B–6.[5]

Two federal courts have considered this issue and have reached opposite results. This is an issue of first impression for this Circuit.

In *United States v. Fairways Villas Condominium Ass'n*, 879 F.Supp. 798 (N.D.Ohio 1995), *vacated* 920 F.Supp. 115 (N.D.Ohio 1996)[6], a handicapped owner of a unit in a condominium complex asked the condominium association to provide her with an exclusive parking spot near her unit to accommodate her disability. The defendant association, as here, argued that it lacked the power to provide plaintiff with a parking spot. *Id.* at 800. The court first noted that the master deed[7] creating the condominium designated surface parking as part of the common areas and facilities owned by all unit owners as tenants in common. *Id.* Next, the court cited to § 5311.04 of the Ohio Revised Code, which, like its New Jersey counterpart (N.J.S.A.46:8B–6), places limitations on the sale and division of property within the common areas of condominiums. *Id.* ("The common areas and facilities of a condominium property are owned by the unit owners as-tenants in common, and the ownership shall remain undivided" (citing O.R.C.A. § 5311.04(A))). The court next held, that under Ohio law, "the percentage of interest in the common areas and facilities of each unit as expressed in the original declaration shall not be altered except by an amendment to the declaration unanimously approved by all unit owners affected." *Id.* (citing O.R.C.A. § 5311.04(D)). The court

then concluded that "[i]n requesting that a portion of the surface parking area be designated for her use only, [plaintiff] necessarily—and understandably—sought to restrict other unit owners' ability to utilize that parking area.... [W]hile Ohio law may permit an appropriation of property within a common area such as [plaintiff] requested, it requires the property declaration itself to be amended to reflect the change by the unanimous vote of all unit owners. This fact leads the Court to join the defendants' conclusion that neither the Association nor the members of its board (in that capacity) can be shown to have discriminated against [plaintiff] by sheer virtue of the fact that the Association did not secure a parking space for her." *Id.* at 801. While recognizing that the individual members of the condominium acting collectively had the power to give plaintiff a parking spot pursuant to O.R.C. § 5311.04(D), the condominium association itself had no authority to do so, and therefore, according to the court, could not be held liable. *Id.* at 801–02.

The court in *Shapiro v. Cadman Towers, Inc.*, 844 F.Supp. 116 (E.D.N.Y.1994), *aff'd*, 51 F.3d 328 (2d Cir.1995), granted a handicapped plaintiff's motion for preliminary injunctive relief enjoining a cooperative association from refusing to give her an exclusive parking space. The court so held in spite of the fact that the parking spaces at issue there, as in this case, were "something all shareholders, including Ms. Shapiro, own and control in common as members of the cooperative association." *Shapiro*, 844 F.Supp. at 124. The court reasoned that the non-exclusive basis for parking at issue was not "a creature of the lease to Ms. Shapiro's apart-

---

**5.** N.J.S.A. 46:8B–6 provides: The proportionate undivided interest in the common elements assigned to each unit shall be inseparable from such unit, and any conveyance, lease, devise or other disposition or mortgage or other encumbrance of any unit shall extend to and include such proportionate undivided interest in the common elements, whether or not expressly referred to in the instrument effecting the same. The common elements shall remain undivided and shall not be the object of an action for partition or division. The right of any unit owner to the use of the common elements shall be a right in common with all other unit owners (ex-

cept to the extent that the master deed provides for limited common elements) to use such common elements in accordance with the reasonable purposes for which they are intended without encroaching on the lawful rights of the other unit owners.

**6.** *Fairways Villas* was vacated after the parties settled the matter during the pendency of an appeal.

**7.** Under Ohio law, a master deed is called a "property declaration."

ment or her contract of sale but of the building's rules and regulations which may be changed by the appropriate vote of all the members of the cooperative under the building's by-laws." *Id.* (citing N.Y.Coop. Corp. Law § 44). The court held that the plaintiff's claim against the cooperative board and its members was likely to succeed despite this seeming limitation on the board's ability to act in the absence of a vote of the cooperative's members. *Id.* at 127.[8]

The Court declines to follow *Fairways Villas* and instead follows *Shapiro.*

■ As an initial matter, the Court agrees with the Association that the Master Deed expressly provides that parking spaces in the Condominium are common elements for the *non-exclusive* use of the unit owners. (Master Deed ¶ 6(b)). The Court also agrees with the Association that the Master Deed precludes the Association from granting an exclusive parking space to a handicapped unit owner without the prior approval of at least two-thirds of the unit owners's votes entitled to be cast. (Master Deed ¶ 18).

Here, however, is where the Court's agreement with the Association (and *Fairways Villas*) ends. It does not follow from these observations that the Association is powerless to bring use of the common elements into compliance with federal law. Indeed, as set forth more fully below, an examination of federal housing law and New Jersey law governing condominium associations reveals that the Association is duty bound to: (1) avoid enforcing provisions of the Master Deed that have discriminatory effects; and (2) regulate use of the common elements so as to comply with the requirements of the FHAA. This conclusion rests on two primary grounds: (1) that to the extent the Master Deed contains provisions that, either on their face or as applied, violate the

FHAA, they cannot be enforced as written; and (2) that the Association, in its role as manager of the common elements, is the entity charged with enforcing the Master Deed, and therefore, is the only proper party to sue under these circumstances.

The provisions of the Master Deed, insofar as their application would compel the Association to violate Mr. Gittleman's rights under the FHAA, are *pro tanto* unlawful, and the Association's enforcement of them, therefore, subjects it to liability under the FHAA.

Both the federal regulations issued by HUD and the FHAA's legislative history clarify that enforcement of private agreements, such as the Master Deed, that have discriminatory effects subjects the enforcing party to liability under the FHAA. 24 C.F.R. § 100.80(b)(3) makes it unlawful to:

> Enforc[e] covenants or other deed, trust or lease provisions which preclude the sale or rental of a dwelling to any person because of race, color, religion, sex, handicap, familial status, or national origin.

Similarly, the FHAA's legislative history confirms that its reach extends to prohibit discrimination based on the enforcement of private agreements, such as the Master Deed here. House Report No. 100–711, 100th Cong., 2d Sess., *reprinted in* 1988 U.S.C.A.A.N. 2173, 2184–85, states, in relevant part:

> New subsection 804(f)(2) would similarly prohibit discrimination against the same persons in the terms, conditions, privileges, or provision of services or facilities. This provision is intended to prohibit *special restrictive covenants or other terms or conditions,* or denials of service because of an individual's handicap. . . . It would guarantee, for example, that an individual could not be discriminatorily barred from

---

8. The Court finds *Fairways Villas*'s attempt to distinguish *Shapiro* to be unpersuasive. The *Fairways Villas* court distinguishes *Shapiro* on the grounds that, in *Fairways Villas*, relief could only be granted by amending the master deed, which under Ohio law can only be accomplished by unanimous approval of the unit owners, O.R.C.A. § 5311.04(D), whereas, in *Shapiro*, relief could be granted to the plaintiff merely by amendment of the cooperative's by-laws. This distinction is without significance, because in order to amend a cooperative's by-laws under New York law, the cooperative board must obtain the approval of the cooperative members. N.Y. Coop. Corp. Law § 44. Under either State's law, then, granting the relief the handicapped resident sought would appear to have required the prior approval of the member-owners.

access to recreation facilities, *parking privileges*, cleaning and janitorial services and other facilities, uses of premises, benefits and privileges made available to other tenants, residents, and owners.... The Act is intended to prohibit the application of special requirements through *land use regulations, restrictive covenants, and conditional or special use permits* that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community.

(emphasis added).

Case law also supports the Court's conclusion that the FHAA prohibits discrimination based on the enforcement of private agreements regarding land use. In *Martin v. Constance*, 843 F.Supp. 1321 (E.D.Mo.1994), a group of private citizens initiated a state court action to enforce a facially non-discriminatory restrictive covenant. The court found that the private citizens acted, at least in part, to prevent an adult home for the developmentally disabled from locating in the neighborhood. The court, citing to 24 C.F.R. § 100.80(b)(3) and the FHAA legislative history set forth above, held that the private citizens' attempt to enforce the covenants violated the FHAA. *Id.*[9]

Similarly here, the Master Deed's discriminatory provisions are subject to the purview of the FHAA. To the extent that the Master Deed compels a discriminatory result as applied to Mr. Gittleman, it is unlawful and therefore void. *Cf. Association for Advancement of the Mentally Handicapped, Inc. v. City of Elizabeth*, 876 F.Supp. 614 (D.N.J.

1994) (land use ordinance that resulted in discriminatory effect invalid under FHAA).

The Association cannot seek to avoid liability under the FHAA by using the terms of the Master Deed as a shield. Rather, as the regulations and legislative history cited above make clear, the FHAA was clearly intended to reach and invalidate those aspects of private agreements, such as the Master Deed, that have discriminatory effects.

■ The next issue is whether the Association is the proper party to sue for the violations of the FHAA alleged here. The Court concludes that it is. This conclusion is derived from a consideration of: (1) the relevant New Jersey law granting condominium associations the power to regulate use of the common elements and enforce the terms of the Master Deed; (2) the terms of the Condominium's By–Laws and Master Deed; and (3) the Association's statutory standing to sue and be sued.

### 1. New Jersey Law Governing Condominium Associations

Under the Condominium Act, the Association is given the requisite authority to bring use of the Condominium's common elements into compliance with federal housing law. Further, because the Association is the entity charged under New Jersey law with the duty of enforcing the terms of the Master Deed, it is the proper entity to sue if enforcement of the Master Deed has a discriminatory effect on a protected class under the FHAA. Based on the Court's analysis of the powers and obligations of condominium associations

---

9. Other courts considering similar issues have also held that discriminatory restrictive covenants are within the purview of the FHAA. *See United States v. Wagner*, 940 F.Supp. 972 (N.D.Tex.1996) (single family deed restrictions cannot be used to exclude group home from neighborhood); *United States v. Scott*, 788 F.Supp. 1555 (D.Kan.1992) (subdivision residents' action to enforce restrictive covenant to preclude establishment of group home for mentally retarded violates FHAA); *Rhodes v. Palmetto Pathway Homes*, 303 S.C. 308, 400 S.E.2d 484 (1991) (enforcement of discriminatory restrictive covenant would violate strong federal public policy as expressed in FHAA); *Casa Marie, Inc. v.*

*Superior Court*, 752 F.Supp. 1152, 1168 (D.P.R. 1990), *vacated on other grounds*, 988 F.2d 252 (1st Cir.1993); *Hill v. Community of Damien of Molokai*, 121 N.M. 353, 911 P.2d 861 (1996); *Deep East Texas Regional Mental Health and Mental Retardation Servs. v. Kinnear*, 877 S.W.2d 550, 557 (Tex.App.—Beaumont 1994, no writ); *Broadmoor San Clemente Homeowners Ass'n v. Nelson*, 25 Cal.App.4th 1, 30 Cal.Rptr.2d 316 (1994); *Artist Lake Condominium v. Rios*, 166 Misc.2d 381, 630 N.Y.S.2d 875 (1995) (restrictive covenant in condominium master deed cannot be enforced to exclude mentally disabled residents from purchasing units).

under New Jersey law, the Court **denies** the Association's motion for summary judgment.

The Condominium Act grants condominium associations certain powers and imposes upon them certain duties. Several of these powers and duties are relevant to the scope of the Association's duty to Mr. Gittleman in this case.

Condominiums are administered and managed by condominium associations, such as the Association in this case. N.J.S.A. § 46:8B–3(b); *Siller v. Hartz Mountain Assoc.*, 93 N.J. 370, 375, 461 A.2d 568 (1983). The unit owners elect the members of the association to perform these administrative and managerial tasks. *Siller*, 93 N.J. at 375–76, 461 A.2d 568.[10]

The New Jersey legislature gave condominium associations the power to enter into contracts, bring suit and be sued. N.J.S.A. § 46:8B–15(a).[11] Furthermore, the Association is charged with a duty to adopt, distribute, amend and enforce "rules governing the use and operation of the condominium and the condominium property and the use of the common elements ... subject to the right of a majority of unit owners to change any such rules." N.J.S.A. 46:8B–14(c). The association also has the power to "lease or license the use of the common elements in a manner not inconsistent with the rights of unit owners." N.J.S.A. 46:8B–15(c). The association is also obligated to purchase casualty and liability insurance covering all the common elements of the condominium. N.J.S.A. 46:8B–14(c) & (d).

The Condominium Act places the duty of enforcing the Condominium's By–Laws and Master Deed upon the Association. N.J.S.A. 46:8B–14(c) (association shall be responsible for "[t]he adoption, distribution, amendment and *enforcement* of rules governing the use and operation of the condominium and the condominium property and use of the common elements, including but not limited to the imposition of reasonable fines, assessments and late fees upon unit owners, if authorized by the master deed"). The very act of enforcing the Master Deed's exclusive parking provision, insofar as such enforcement results in a denial of a handicapped unit owner's FHAA rights, subjects the Association to liability under the FHAA. *See Martin*, 843 F.Supp. at 1326 (private citizens' act of enforcing restrictive covenant to deny plaintiff's FHAA rights subjected them to liability under FHAA); 24 C.F.R. § 100.80(b)(3) (unlawful to "enforce covenants or other deed, trust or lease provisions" that violate FHAA).[12]

In addition to the duty to avoid enforcing discriminatory provisions of the Master Deed, the Court concludes that under New Jersey law, the Association is charged with an affirmative duty to ensure that the Condominium's common elements are managed so as to comply with federal housing law.[13]

In enacting the Condominium Act, the New Jersey legislature created a new form of property ownership. *Id.* ("the Legislature recognized a new form of ownership of real property in enacting the Condominium

---

**10.** Only when at least 75% of a condominium development's units have been sold do the unit owners elect all of the members of the association's governing body. The developer of the condominium initially controls the association. When 25% of the units have been sold, the unit owners are entitled to elect 25% of the members of the association's governing body. That percentage increases to 50% of the governing body once 40% of the units have been sold. *Siller*, 93 N.J. at 376, 461 A.2d 568; N.J.S.A. 46B–12.1.

**11.** The Association, according to its counsel, is organized as a non-profit corporation, and as such also can "sue and be sued, complain and defend and participate as a party or otherwise in any judicial, administrative, arbitrative or other proceeding, in its corporate name." N.J.S.A. § 15A:3–1 (West 1984 & 1997 supp.).

**12.** As the agency charged with administering the FHAA, HUD's interpretation of the statute is entitled to considerable deference. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 107, 99 S.Ct. 1601, 1611–12, 60 L.Ed.2d 66 (1979).

**13.** Indeed, an affirmative duty to ensure compliance with the FHAA follows implicitly from the Association's duty to avoid enforcing the Master Deed's discriminatory terms. In the absence of an affirmative duty to accommodate handicapped unit owners by promulgating appropriate rules, the injuries alleged here would not be addressed. In other words, a duty to avoid enforcement of discriminatory terms is pointless without imposing a correlative duty to ensure compliance.

Act").[14]  A unit owner does not exercise complete dominion over his or her undivided share;'rather, the unit owner's property right in the common elements is conditioned by the right of the association to administer and manage the common elements.  N.J.S.A. 46:8B–3(b); *Thanasoulis v. Winston Towers 200 Ass'n,* 110 N.J. 650, 656–57, 542 A.2d 900 (1988) ("The most significant responsibility of an association is the management and maintenance of the common areas of the condominium complex").  Concomitant with its authority to administer and manage is the power to promulgate rules and regulations governing the use and enjoyment of the common elements.  N.J.S.A. 46:8B–14(c).  The Association's managerial power extends to aspects of dominion traditionally associated with ownership, such as the ability to lease or license use of the condominium's common elements, to purchase insurance covering risks incidental to the use of the common elements, and to sue third parties for damages to the common elements.  Moreover, N.J.S.A. 46:8B–14(c) obligates the *Association* to adopt rules and regulations governing use of the common elements.  That this exercise of power may then be overridden by the vote of a majority of owners does not erase the fact that the initial power to regulate use of the common elements is vested with the Association.  *See Winston Towers,* 110 N.J. at 660–61, 542 A.2d 900 ("Concededly, defendant can establish reasonable rules and regulations concerning the size of the [parking] spaces, speed limits in the garage, and other rules necessary to maintain order and safety in the area").

The Condominium Act thus establishes a statutory scheme empowering the Association to manage the common elements and imposes a duty on the Association to promulgate rules and regulations in furtherance of this managerial authority.  The Association, in its capacity as manager of the common elements, clearly has a duty to exercise its managerial discretion in a manner consistent with the dictates of the FHAA.  In the case of a unit owner with a handicap, that would mean assigning a parking spot close to his or her home.[15]

The Association's reliance on N.J.S.A. 46:8B–6 for a contrary result does not bear scrutiny.  This section of the Condominium Act provides, in pertinent part, that the "rights of any unit owner to the use of the common elements shall be a right in common with all other unit owners (except to the extent that the master deed provides for limited common elements) to use such common elements in accordance with the reasonable purposes for which they are intended without encroaching on the lawful rights of the other unit owners."  This section cannot be read to prohibit the Association from accommodating Mr. Gittleman's alleged disability, because that would result in the other unit owners encroaching on Mr. Gittleman's rights under federal law, a result the statute expressly forbids.  Furthermore, to the extent that this provision can be read to compel the Association to violate Mr. Gittleman's

---

**14.**  It is not clear how new this form of ownership actually is.  According to at least one commentator, the history of condominiums has been traced back to ancient Rome.  *See* Note, "Land Without Earth—Condominium," 15 U.Fla.L.Rev. 203, 205 (1962) (cited in *Siller,* 93 N.J. at 375 n. 4, 461 A.2d 568).

**15.**  *Winston Towers,* in which the Supreme Court of New Jersey held that a condominium association exceeded its rule-making authority when it charged non-resident unit owners a higher monthly parking fee than it charged resident owners in order to obtain extra revenue for the association's benefit, is distinguishable from the case here.  As the Supreme Court made clear, the association possesses the right to regulate the use of the parking spaces to "maintain order and safety in the area."  *Winston Towers,* 110 N.J. at 661, 542 A.2d 900.  The regulation at issue in *Winston Towers,* however, went beyond that legitimate regulatory power and, by imposing a surcharge on the parking privileges for non-resident unit owners (*i.e.,* those most likely to rent out their unit), "expropriate[d] the economic value of plaintiff's parking spot for its own use."  *Id.* Regulating use of the parking facilities to comply with federal anti-discrimination law is unlike the quasi-taking at issue in *Winston Towers.*  Such regulation is designed to regulate the "use and enjoyment," N.J.S.A. 46:8B–14(c), of the common elements and cannot fairly be viewed as imposing an unfair economic burden on non-handicapped unit owners.  Thus, the Court does not read *Winston Towers* as precluding the Association from using its regulatory power to manage the common elements in accordance with the strictures of federal anti-discrimination law.

FHAA rights, it is invalid. 42 U.S.C. § 3615 ("any law of a State, a political subdivision, or other such jurisdiction that purports to require or permit any action that would be a discriminatory housing practice under this title shall to that extent be invalid").

### 2. *The Condominium's By–Laws and Master Deed*

The Court's conclusion that the Association is empowered to regulate use of the common elements to comply with the FHAA is also supported by the language of the Master Deed and the Condominium's By–Laws.

Section 4 of the Condominium's By–Laws states:

> Each Unit owner who is entitled to membership in the Association pursuant to these By Laws shall be privileged to use and enjoy the Common Elements *subject to the right of the Association to promulgate rules and regulations governing such use and enjoyment.*

(By-Laws of Woodhaven Condominium Association, Inc., attached as Ex. B to Defendant's Moving Brief) (emphasis added).

The gravamen of Mr. Gittleman's Complaint is that the Association failed to promulgate appropriate rules so that he could enjoy equal privileges in the use of the Condominium's common elements. The very terms of the By–Laws empower the Association to make rules and regulations governing the use and enjoyment of the common elements. (Association By–Laws Section 4). The Association's failure to promulgate appropriate rules despite its apparent ability to do so is precisely the type of conduct regulated by the FHAA. *See* 42 U.S.C. § 3604(f)(3)(B) (discrimination includes "a refusal to make reasonable accommodations in *rules,* policies, practices, or services, when such accommodations may be necessary to afford such person *equal opportunity to use and enjoy* a dwelling") (emphasis added); *see also* 24 C.F.R. § 100.204(b) ("Without a reserved space, John might be unable to live in Progress Gardens at all or, when he has to park in a space far from his unit, might have difficulty getting from his car to his apartment unit. The accommodation therefore is necessary to afford John an equal opportuni-

ty to use and enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances.").

The language of the By–Laws indicates that the Association was empowered to promulgate rules regulating the parking spaces so as to accommodate Mr. Gittleman's alleged handicap. Accordingly, the Court **denies** the Association's motion for summary judgment on this basis.

### 3. *The Association's Standing to be Sued*

Finally, the fact that, under New Jersey law, the Association is given statutory standing to sue and be sued supports the Court's conclusion that the Association is the proper party to sue in the alleged circumstances of this case.

In *Siller v. Hartz Mountain Assoc.,* 93 N.J. 370, 461 A.2d 568 (1983), the New Jersey Supreme Court held that a condominium association had exclusive standing to sue third parties for damages to the common elements. *Siller,* 93 N.J. at 377, 461 A.2d 568; *see also* Annotation, *Standing to Bring Action Relating to real Property of Condominium,* 74 A.L.R.4th 165 (1989 & 1996 Supp.) (discussing similar rules in other jurisdictions). The Supreme Court reasoned that the "clear import, express and implied" of the Condominium Act is that the association has standing to act on behalf of the unit owners in litigation affecting the common elements. *Siller,* 93 N.J. at 377–78, 461 A.2d 568 ("The statutory provisions empowering the association to use, imposing the duty on it to repair, and authorizing it to charge and collect 'common expenses,' coupled with the prohibition against a unit owner performing any such work on common elements, are compelling indicia that the association may institute legal action on behalf of the unit owners for damages to common elements caused by third persons.") (internal footnotes omitted).

The clear import of the Condominium Act is that the Association may be sued for its failure to administer or manage the common elements in a lawful manner and for its acts in enforcing discriminatory provisions of the Master Deed or By–Laws. The statutory

provisions providing: (1) that the Association may be sued, N.J.S.A. 46:8B–15(a); (2) that the Association is obligated to adopt, amend and enforce rules governing the use of the Condominium's common elements, N.J.S.A. 46:8B–14(c); and (3) that the Association is elected by the unit owners. to manage the common elements, · N.J.S.A. 46:8B–12.1 [16], compel the conclusion that the Association is a proper Defendant in this action to enforce Mr. Gittleman's federal rights.[17]

If the Court were to accept the Association's reading of the Condominium Act, a handicapped person in need of accommodation would have no remedy for a violation of his federally-secured rights. Such a result is unacceptable in light of the obvious intent of the FHAA to eradicate discrimination against, among others, the handicapped. *See Shapiro,* 844 F.Supp. at 122; *see also Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 163, 2 L.Ed. 60 (1803) ("The government of the United states has been emphatically termed a government of laws, and not of men. It will certainly cease to deserve this high appellation, if the laws furnish no remedy for the violation of a vested legal right.").

Therefore, the Court declines to read the Condominium Act, the Association's By-Laws or its Master Deed as prohibiting the Association from ensuring that the use of the Condominium's common elements complies with federal housing law.

## III. *CONCLUSION*

Nearly fifty years ago, the Supreme Court of the United States held that judicial enforcement of racially-discriminatory restrictive covenants is forbidden by the Equal Protection Clause of the Constitution. *Shelley v. Kraemer,* 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). In so holding, the Supreme Court made clear that discriminatory practices effectuated by private agreements could not, consistent with the Fourteenth Amendment, be enforced judicially.

---

**16.** *See also Winston Towers,* 110 N.J. at 656, 542 A.2d 900 (the association "is a representative body that acts on behalf of the unit owners").

**17.** The Court's holding is limited to the facts of this case; this Opinion expresses no view as to

The Supreme Court's holding is no less relevant today than it was fifty years ago. As forms of land ownership evolve, the judiciary must adopt its rules of law accordingly. To accept the Association's argument that it is powerless to regulate the common elements of the Condominium in accordance with the dictates of federal anti-discrimination law would exempt a large (and growing) segment of the housing market from the reach of the FHAA and other remedial statutes. This is a result that cannot be tolerated.

As condominium associations assume more of the powers traditionally associated with the state, *see* Hearings, Assembly Task Force to Study Homeowner Associations, Public Meeting, 11–21–95 (discussing amendments to Condominium Act, including provisions empowering associations to levy fines for failure to comply with by-laws (N.J.S.A.46:8B–14(c))), it is only fair that they assume more of the obligations for ensuring that the rights of the unit owners they represent are protected.

For these reasons, as well as the ones stated above in this Opinion, the Association's motion for summary judgment is **denied.**

An appropriate Order follows.

## *ORDER*

This matter having come before the Court on the motion of Defendant, the Woodhaven Condominium Association, Inc.'s (the "Association") motion for summary judgment dismissing Plaintiff's Complaint; and

The Court having considered the submissions of counsel for the Defendant; and

The Court having decided this matter pursuant to Fed. R. Civ. P. 78; and

For good cause shown;

---

whether, under different circumstances, it would become necessary to join all the unit owners as defendants in a suit affecting their rights in the common elements.

IT IS on this 12th day of August, 1997, ORDERED that Defendants' motion for summary judgment is **denied**.