SIDNEY SILLER AND SHIRLEY SILLER, HIS WIFE; IRVING GAINES AND CORALIE J. GAINES, HIS WIFE; MARSHALL NATAPOFF AND JANET NATAPOFF, HIS WIFE; FRANCIS CLARK AND LUCILLE CLARK, HIS WIFE; AND JOEL KRAMER, SINGLE, PLAINTIFFS-APPELLANTS, AND HARMON COVE CONDOMINIUM II ASSOCIATION, INC., PLAINTIFF-INTERVENOR, v. HARTZ MOUNTAIN ASSOCIATES, A CORPORATION; HARMON COVE I CONDOMINIUM ASSOCIATION, INC., A CORPORATION; AND HARMON COVE RECREATION ASSOCIATION, INC., A CORPORATION, DEFENDANTS-RESPONDENTS.

Argued February 9, 1983—Decided June 16, 1983.

*John Tomasin* argued the cause for appellants.

*Jerome A. Vogel* argued the cause for respondent Hartz Mountain Associates, etc. (*Jeffer, Hopkinson & Vogel,* attorneys).

*Richard S. Miller* argued the cause for respondents Harmon Cove I Condominium Association, Inc., etc., et al. (*Williams, Caliri, Miller & Otley,* attorneys).

The opinion of the Court was delivered by

SCHREIBER, J.

We are called upon in this case to consider certain aspects of the Condominium Act, *N.J.S.A.* 46:8B–1 through –38, in particular those concerning the relationship of the owner of a unit to the associations representing all unit owners with respect to claims against the builder of the condominium. Plaintiffs, owners and inhabitants of housing units in the condominium community "Harmon Cove" in Secaucus, New Jersey, sued the developer, Hartz Mountain Associates (Developer), and the unit owner associations, Harmon Cove I Condominium Association, Inc. (Association), and Harmon Cove Recreation Association, Inc. (Recreation Association) (collectively the Associations). The suit related to alleged defects in and about the units and common

areas and facilities and to a settlement that the two associations were prepared to effectuate on behalf of all unit owners, including plaintiffs, with the Developer.

The plaintiffs, as individual unit owners and on behalf of others similarly situated, had instituted the suit by filing a verified complaint and an order to show cause, in which they sought temporary restraints to prevent consummation of the settlement between the Developer and the Associations. The trial court denied any temporary restraints, signed an order directing the parties to file briefs "as to the standing of plaintiffs to bring this action" and set a date for a hearing on the standing issue. In addition to the briefs, the plaintiffs submitted an affidavit of one unit owner with copies of various documents including the master deed. Defendant Hartz Mountain also submitted a certificate of the director of its residential department with certain attachments and the defendant Association submitted a certified statement of its president with certain attachments.[1] The parties and the trial court considered the matter as if defendants had filed a motion for summary judgment on the ground that plaintiffs lacked standing to institute and maintain the action.

The trial court dismissed the complaint against the Developer and permitted the defendants to consummate the settlement at their own risk. It sustained part of one count of plaintiff's complaint against the Associations. 184 *N.J.Super.* 450 (Ch.Div. 1981). Plaintiffs appealed and the Appellate Division affirmed. 184 *N.J.Super.* 442 (1982). We granted plaintiffs' petition for certification. 91 *N.J.* 264 (1982).

The complaint contained five counts. The first, second, third and fifth counts were directed solely against the Developer. Generally they asserted that the Developer had planned and

[1]The trial court had not examined the defendants' certificates at the time of oral argument because they were submitted shortly before the hearing. It undoubtedly considered them before filing its written opinion.

built the condominium known as Harmon Cove I in Secaucus and had sold units to the five plaintiffs. They alleged that the condominiums and the common elements had numerous defects and deficiencies, all attributable to the Developer. The complaint specified improper insulation of the individual units; inadequate caulking of windows and doors; improper heating system; inadequate driveways and sound insulation; defects in the marina dock area, swimming pool, and boardwalk; and soil settlement problems throughout the entire development. It is important to note that, though most complaints in these counts pertained to the common elements and areas, some related to the individual units. The trial court dismissed these four counts (first, second, third and fifth) with prejudice.

The fourth count, directed solely against the Associations, alleged that settlement negotiations between the Association, the Recreation Association [2] and the Developer with respect to claims arising from the design and building of the "condominiums and the common elements" were near completion. The trial court sustained that part of the fourth count [3] that challenged the actions taken by both Associations on procedural and substantive grounds and permitted the plaintiffs to amend the complaint to express this clearly. This count, as subsequently amended by plaintiffs, charged that the proposed settlement was unreasonable, unlawful, and inadequate, that the Associations had breached their fiduciary duties and responsibilities to plaintiffs, and that the Developer, which at one time properly controlled the Associations, had continued unlawfully to exercise control and influence over the Associations. Moreover, the plaintiffs asserted that the Associations and the Developer were

---

[2]The Association, composed of all unit owners, managed the condominium property. The Recreation Association, also composed of all unit owners, managed the common recreation facilities.

[3]The original fourth count also charged that the Associations had no authority to settle the claims against the Developer.

settling claims pertaining to the individual units as well as the common elements.

## I

The Legislature recognized a new form of ownership of real property in enacting the Condominium Act.[4]  *N.J.S.A.* 46:8B–1 through –38.  The Act requires the developer to execute and file a master deed describing the land, identifying the units, defining the common elements, and providing for an association of unit owners.  The condominium property consists of the land and all improvements.  *N.J.S.A.* 46:8B–3(i).  The individual condominium purchaser owns his unit together with an undivided interest in common elements.  Each unit is a separate parcel of real property which the owner may deal with "in the same manner as is otherwise permitted by law for any parcel of real property."  *N.J.S.A.* 46:8B–4.  The result is that the unit owner, having a fee simple title, enjoys exclusive ownership of his individual apartment or unit, while retaining an undivided interest as a tenant in common in the common facilities and grounds used by all the residents.  Kerr, "Condominium—Statutory Implementation," 38 *St. Johns L.Rev.* 1, 2 (1963);  Berger, "Condominium: Shelter on a Statutory Foundation," 63 *Colum.L.Rev.* 987, 989 (1963);  15A *Am.Jur.2d, Condominiums and Cooperative Apartments,* § 1.

The Act also provides that the condominium will be administered and managed by the association.  *N.J.S.A.* 46:8B–3(b);

---

[4]The history of condominiums has been traced back to ancient Rome, Note, "Land Without Earth—Condominium," 15 *U.Fla.L.Rev.* 203, 205 (1962), though this has been disputed, Berger, "Condominium: Shelter on a Statutory Foundation," 63 *Colum.L.Rev.* 987, 987 n. 5 (1963).  Others contend that the concept can be traced back to the ancient Hebrews in the Fifth Century B.C., Kerr, "Condominium—Statutory Implementation," 38 *St. Johns L.Rev.* 1, 3 (1963); Note, "The FHA Condominium," 31 *Geo.Wash.L.Rev.* 1014, 1015 (1963).  There is recognition of the concept in common law.  *Coke on Littleton,* quoted in Ball, "Division in Horizontal Strata of the Landscape Above the Surface," 39 *Yale L.J.* 616, 621 (1930).

46:8B–12. The business form of the association is unrestricted. *N.J.S.A.* 46:8B–12. The developer initially controls the association. When 25% of the units have been sold, the unit owners are entitled to elect at least 25% of the association's governing body. *N.J.S.A.* 46:8B–12.1(a). The unit owners' authority is increased to 40% when half of the units have been sold. When the unit owners own 75%, they are entitled to elect all the members of the governing body. *N.J.S.A.* 46:8B–12.1(a).[5] Once that occurs, the developer is required to "relinquish control of the association." *N.J.S.A.* 46:8B–12.1(d).

The association is charged with the "maintenance, repair, replacement, cleaning and sanitation of the common elements." *N.J.S.A.* 46:8B–14(a). The common elements are defined as follows:

"Common elements" means:

(i) the land described in the master deed;

(ii) as to any improvement, the foundations, structural and bearing parts, supports, main walls, roofs, basements, halls, corridors, lobbies, stairways, elevators, entrances, exits and other means of access, excluding any specifically reserved or limited to a particular unit or group of units;

(iii) yards, gardens, walkways, parking areas and driveways, excluding any specifically reserved or limited to a particular unit or group of units;

(iv) portions of the land or any improvement or appurtenance reserved exclusively for the management, operation or maintenance of the common elements or of the condominium property;

(v) installations of all central services and utilities;

(vi) all apparatus and installations existing or intended for common use;

(vii) all other elements of any improvement necessary or convenient to the existence, management, operation, maintenance and safety of the condominium property or normally in common use; and

(viii) such other elements and facilities as are designated in the master deed as common elements. [*N.J.S.A.* 46:8B–3(d)]

---

[5]The developer can retain one representative on the governing body in certain circumstances.

Notwithstanding any of the provisions of subsection a of this section, the developer shall be entitled to elect at least one member of the governing board or other form of administration of an association as long as the developer holds for sale in the ordinary course of business one or more units in a condominium operated by the association. [*N.J.S.A.* 46:8B–12.1(a)]

It should be noted that under subsection (d)(viii) above, the common elements may be expanded to include other "elements and facilities" designated in the master deed. The association has a right of access to each unit "as may be necessary for the maintenance, repair or replacement of any common elements therein or accessible therefrom." *N.J.S.A.* 46:8B–15(b).

The association is empowered to assess and collect funds from unit owners for common expenses, to maintain accounting records, and to obtain insurance against loss by fire or other casualties damaging the common elements and all structural portions of the condominium property. *N.J.S.A.* 46:8B–14(b), (d) and (g). The statute authorizes the association to "enter into contracts, bring suit and be sued." *N.J.S.A.* 46:8B–15(a).[6] No unit owner, except as an officer of the association, may bind the association. *N.J.S.A.* 46:8B–16(a). Nor may a unit owner "contract for or perform any maintenance, repair, replacement, removal, alteration or modification of the common elements or any additions thereto, except through the association and its officers." *N.J.S.A.* 46:8B–18. If a unit owner fails to comply with the rules and regulations or any of the provisions in the master deed, he may be subject to a suit for injunctive relief by the association or by any other unit owner. *N.J.S.A.* 46:8B–16(b).

## II

All parties agree that the clear import, express and implied, of the statutory scheme is that the association may sue third parties for damages to the common elements, collect the funds when successful, and apply the proceeds for repair of the proper-

---

[6]In this case the Association is a nonprofit corporation. As such it may, under the terms of *N.J.S.A.* 15:1–4(b), "sue and be sued, complain and defend in any court" any action. Unincorporated associations consisting of seven or more persons may sue or be sued "in any civil action affecting [the unincorporated association's] common property, rights and liabilities." *N.J.S.A.* 2A:64–1.

ty. The statutory provisions empowering the association to sue, imposing the duty on it to repair, and authorizing it to charge and collect "common expenses," [7] coupled with the prohibition against a unit owner performing any such work on common elements, are compelling indicia that the association may institute legal action on behalf of the unit owners for damages to common elements caused by third persons.

In the absence of any statutory plan, we have acknowledged the standing of an association of tenants in an apartment building to sue their landlord. *Crescent Pk. Tenants Assoc. v. Realty Eq. Corp. of N.Y.*, 58 *N.J.* 98 (1971). The plaintiff tenant association in *Crescent Park* was a nonprofit organization composed of tenants of a high-rise luxury apartment building. It charged the landlord with responsibility for defects in various parts of the common elements, such as the air conditioning system, elevators, laundry rooms and swimming pool. The complaint was dismissed on the ground that the plaintiff had no standing. Justice Jacobs, writing on behalf of this Court, reversed. He observed that the individual tenants could have brought such a suit and that by acting together their bargaining power was enhanced. *Id.* at 108. He noted that the complaint was

confined strictly to matters of common interest and [did] not include any individual grievance which might perhaps be dealt with more appropriately in a proceeding between the individual tenant and the landlord. So far as common grievances are concerned they may readily and indeed more appropriately be

---

[7]Common expenses are defined as "expenses for which the unit owners are proportionately liable, including but not limited to:

> (i) all expenses of administration, maintenance, repair and replacement of the common elements;
>
> (ii) expenses agreed upon as common by all unit owners; and
>
> (iii) expenses declared common by provisions of this act or by the master deed or by the bylaws." [*N.J.S.A.* 46:8B–3(e) ]

It has been held that an association by virtue of its assessment power may include the litigation costs as a common expense. *See Margate Village Condominium Ass'n, Inc. v. Wilfred, Inc.*, 350 *So.*2d 16, 17 (Fla.App.1977) (upholding association's right to assess all owners, including developer, for litigation expenses, including those of an action against developer).

dealt with in a proceeding between the Association, on the one hand, and the landlord, on the other, thus incidentally avoiding the procedural burdens accompanying multiple party litigation." [*Id.* at 109]

Justice Jacobs concluded that "it [was] difficult to conceive of any policy consideration or any consideration of justice which would fairly preclude the Association from maintaining, on behalf of its member tenants, the present proceeding between itself as plaintiff and the landlord and its parent company as defendants." *Id. See, e.g., Piscataway Apt. Assoc. v. Tp. of Piscataway,* 66 *N.J.* 106 (1974) (nonprofit association of apartment house owners maintained action).

We find nothing in the legislative scheme governing condominiums to indicate policy considerations different from those expressed in *Crescent Park.* Avoidance of a multiplicity of suits, economic savings incident to one trial, elimination of contradictory adjudications, expedition in resolution of controversies, accomplishment of repairs, and the positive effect on judicial administration are supportive policy reasons.[8] Moreover, the financial burden on an individual owner may be so great and so disproportionate to his potential recovery that he could not or would not proceed with litigation. Other jurisdictions have also interpreted their statutes governing condominiums to authorize unit owner associations to sue with respect to claims pertaining to common elements.[9] *1000 Grandview Ass'n v. Mt. Washington Associates,* 290 *Pa.Super.* 365, 434 *A.*2d 796 (Pa.Super.1981); *Governors Grove Condominium Ass'n, Inc. v.*

---

[8]The plaintiffs, though not addressing the issue squarely, have implicitly indicated that the Legislature would have no authority to determine whether associations would have a right to sue because this is "procedural" and exclusively within the jurisdiction of the Supreme Court. *Winberry v. Salisbury,* 5 *N.J.* 240, 255 (1950). It is not necessary for us to address that question since we are in full agreement with the policy expressed.

[9]Many condominium statutes were modeled after the Federal Housing Administration's Model Statute for the Creation of Apartment Ownership, which acknowledges the right of the association to sue on behalf of the unit owner. *See* § 7 of FHA Model Statute reprinted in Rohan and Reskin, 1A *Condominium Law & Practice,* Appendix B–3.

*Hill Development Corp.,* 35 *Conn.Sup.* 199, 404 *A.*2d 131, 134 (Conn.Super.Ct.1979); see also *Avila South Condominium Ass'n v. Kappa Corp.,* 347 *So.*2d 599, 607–09 (Fla.Sup.Ct.1979), in which the Florida Supreme Court held that the legislature did not have authority to empower the association to sue, but accomplished the same effect by promulgating a court rule. *Contra, Deal v. 999 Lakeshore Ass'n,* 579 *P.*2d 775, 777–78 (Nev.1978) (dictum); *Friendly Village Community Ass'n, Inc. v. Silva & Hill Constr. Co.,* 31 *Cal.App.*3d 220, 225, 107 *Cal.Rptr.* 123, 126, 69 *A.L.R.*3d 1142, 1146 (1973). *See generally* Annot., "Standing to bring act relating to real property of condominiums," 72 *A.L.R.*3d 314 (1976); Annot., "Proper party plaintiff in action for injury to common areas of condominium development," 69 *A.L.R.*3d 1148 (1976); Note, "Condominium Class Actions," 48 *St.Johns L.Rev.* 1168, 1180–81 (1974).

## III

If, as we have held, the association may sue to protect the rights and interests of the unit owners in the common elements, does it have the exclusive right to maintain those actions? Obviously the unit owner has an interest in claims against the developer arising out of damages to or defects in the common elements. However, the association has been charged with and delegated the primary responsibility to protect those interests. "The association ... shall be responsible for the ... maintenance, repair, replacement, cleaning, and sanitation of the common elements." *N.J.S.A.* 46:8B–14. So long as it carries out those functions and duties, the unit owners may not pursue individual claims for damages to or defects in the common elements predicated upon their tenant in common interest. The Condominium Act contemplates as much. The association, not the individual unit owner, may maintain and repair the common elements. "No unit owner shall contract for or perform any maintenance, repair, replacement, removal, alteration or modification of the common elements or any additions thereto, except through the association and its officers." *N.J.S.A.* 46:8B–18.

Indeed the statute authorizes the association to assess the membership to raise those funds designated as "common expenses." *N.J.S.A.* 46:8B–3(e). "A unit owner [is], by acceptance of title ... conclusively presumed to have agreed to pay his proportionate share of common expenses." *N.J.S.A.* 46:8B–17.

It would be impractical indeed to sanction lawsuits by individual unit owners in which their damages would represent but a fraction of the whole. If the individual owner were permitted to prosecute claims regarding common elements, any recovery equitably would have to be transmitted to the association to pay for repairs and replacements. A sensible reading of the statute leads to the conclusion that such causes of action belong exclusively to the association, which, unlike the individual unit owner, may apply the funds recovered on behalf of all the owners of the common elements. See W. Hyatt, *Condominium and Homeowner Association Practice: Community Association Law* 105 (1981), suggesting that only association be permitted to maintain action.

This is not to say that a unit owner may not act on a common element claim upon the association's failure to do so. In that event the unit owner's claim should be considered derivative in nature and the association must be named as a party. Rule 4:32–5 would be applicable. That Rule governs actions "brought to enforce a secondary right on the part of one or more shareholders in an association, incorporated or unincorporated, because the association refuses to enforce rights which may properly be asserted by it."

The unit owner may also sue the developer on behalf of the association irrespective of its governing board's willingness to sue during the period of time that the association remains under the control of the developer. The inherent conflict of interest is such that the association would not be in a position to resolve conflicts with the developer in the absence of the ap-

proval of the unit owners, other than the developer.[10]  *See Berman v. Gurwicz,* 189 *N.J.Super.* 89 (Ch.Div.1981), aff'd o.b., 189 *N.J.Super.* 49 (App.Div.1983), certif. denied, —— *N.J.* —— (1983).  In this situation the procedure of *R.* 4:32–5 would also appear to be appropriate.

The unit owner, of course, does have primary rights to safeguard his interests in the unit he owns.  *N.J.S.A.* 48:8B–4.[11]  The physical extent of that property depends upon what has been included in the common elements.  This may be ascertained by examination of the statutory definition and the master deed.  Moreover, defective conditions in the common elements may also result in injury to the unit owner and damages to his personal property and the unit.  For example, a faulty roof may result in personal property damage in the unit.  The unit owner's right to maintain an action for compensation for that loss against the wrongdoer is not extinguished or abridged by the association's exclusive right to seek compensation for damage to the common element.

Further, the association's primary right to sue does not diminish any claim that the unit owner may have against the association.  The association's board of directors, trustees or other governing body have a fiduciary relationship to the unit owners, comparable to the obligation that a board of directors of a corporation owes to its stockholders.  Acts of the governing body should be properly authorized.  Fraud, self-dealing or unconscionable conduct at the very least should be subject to exposure and relief.  *See, e.g., Papalexiou v. Tower West Condo-*

---

[10]A similar concern about overreaching by the developer led the Legislature to establish a rebuttable presumption of unconscionability of leases not executed by representatives of condominium unit owners other than the developer.  *N.J.S.A.* 46:8B–32(a).  Rebuttable presumptions of unconscionability also apply to numerous provisions that may be found in "leases involving condominium property, including . . . recreational or other common facilities or areas."  *N.J.S.A.* 46:8B–32.

[11]This is expressly recognized in the instant case in the Association's by-laws.  Art. 6, § 3, p. 75.

*minium,* 167 *N.J.Super.* 516, 527 (Ch.Div.1979); *Ryan v. Baptiste,* 565 *S.W.2d* 196, 198 (Mo.Ct.App.1976); *Hidden Harbour Estates, Inc. v. Norman,* 309 *So.2d* 180, 182 (Fla.D.Ct.App.1975).

## IV

Our attention must next be directed to the application of the stated principles to the facts of this case. Beginning with the election of November 10, 1977, Hartz Mountain selected only one of nine of the Association's board of directors. Further, the Developer had no directors on the board of the Recreation Association after October 19, 1978. In January 1978 the Association's board of directors designated a Legal Action Committee chaired by Sidney Siller, a plaintiff in this case, to investigate claims against the Developer relating to (a) construction and design and (b) misrepresentation or fraud. This Committee reported to the Board of Directors in June 1978 that major deficiencies attributable to the Developer involved heat, air conditioning and insulation; noise, leaks and erosion; and inadequate parking, clubhouse, swimming and marina facilities. There were also questions concerning shrubbery and foliage. The Committee recommended engaging an attorney, who later became plaintiffs' attorney in this action, to institute the necessary litigation. The board of directors adopted this recommendation, but shortly thereafter the board rescinded the action engaging that attorney and instead utilized the Association's general counsel in its negotiations with the Developer.

A settlement was negotiated providing for the Developer to pay $400,000 to the Association and Recreation Association and for the Developer to receive a general release except for "repair and replacement" of underground utility breaks on that part of the common elements known as Sea Isle for a period of three years. Insofar as the claims and general release are confined to the common areas and facilities, we agree with the trial court and the Appellate Division that the Association had exclusive standing to maintain the action. We also agree with the trial court and the Appellate Division that plaintiffs

are entitled to proceed under the fourth count of the complaint against the Association and Recreation Association because of allegedly wrongful actions taken by their respective boards of directors.

Plaintiffs as unit owners may also continue with their individual causes of actions based upon damages to their individual units. Their complaint referred to such damages. The common elements as defined in the statute, *N.J.S.A.* 46:8B–3(d), and in the master deed, do not include certain items peculiar to the individual units, such as doors and windows that open from a unit. The Associations cannot preclude plaintiffs from pursuing these claims. Each plaintiff should be prepared at the pretrial conference to itemize these individual unit owner claims. We do not pass upon the propriety of the class action, an issue which is not before us.

The judgment of the Appellate Division is affirmed in part and reversed in part. The cause is remanded for trial, costs to abide the event.

*For affirmance in part; reversal in part and remandment*— Chief Justice WILENTZ, and Justices CLIFFORD, SCHREIBER, POLLOCK, O'HERN and GARIBALDI—6.

*Opposed*—None.