29 A.3d 604

**Hillel GREENSTEIN, et al.**

v.

**COUNCIL OF UNIT OWNERS OF AVALON COURT SIX CONDOMINIUM, INC.**

No. 0485, Sept. Term, 2009.

Court of Special Appeals of Maryland.

Sept. 29, 2011.

Raymond D. Burke (Ian I. Friedman, Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, MD, for Appellant.

Mark T. Mixter, Baltimore, MD, for Appellee.

Panel: JAMES R. EYLER, WOODWARD, and DIANE O. LEASURE (Specially Assigned), JJ.

WOODWARD, J.

Appellants are 35 of 36 individual unit owners of Avalon Court Six Condominium, Inc. ("the Condominium") located in Pikesville, Maryland. On January 23, 2008, appellants filed a complaint in the Circuit Court for Baltimore County against

appellee, the Council of Unit Owners of Avalon Court Six Condominium, Inc. ("the Council"), alleging negligence in failing to timely investigate water leakage into the individual units and failing to file a lawsuit against the developer of the Condominium within the statute of limitations. On May 19, 2008, appellants filed for summary judgment, and the Council responded with a cross motion for summary judgment. The circuit court issued a Motions Ruling denying both motions for summary judgment. Thereafter, on September 19, 2008, the Council filed a renewed motion for summary judgment, arguing that appellants failed to establish that the Council owed a duty to appellants to file a lawsuit against the Condominium's developer and that appellants' complaint was time barred. After a hearing on April 13, 2008, the circuit court granted the motion for summary judgment in favor of the Council.

On appeal, appellants present two questions for our review, which, in the words of their brief, are:

I.   Does the Council owe a duty to [ ] appellants to maintain the common elements and, if so, do [ ] appellants have a cause of action against the Council for its failure to maintain the common elements?

II.  Are appellants' claims against the Council time barred?

For the reasons set forth herein, we shall reverse the judgment of the circuit court and remand the case for further proceedings.

## BACKGROUND

### Duties and Responsibilities of the Council and Board of Directors of the Condominium

The Condominium Declaration ("the Declaration") and the Condominium By–Laws ("the By–Laws") set forth in detail the responsibilities and obligations of the Council and Condominium Board of Directors, including the obligation of the Council to maintain the common elements and repair the

damage caused to the common elements by the water leaks at issue in the instant appeal.

Article V, § 5.2.1. of the Declaration provides that

[t]he affairs of the Condominium shall be governed by [the Council], an entity which is both a council of unit owners under the provisions of the [Maryland Condominium Act ("the Act"), Maryland Code (1974, 2010 Repl.Vol.), § 11–101, *et seq.*, of the Real Property Article ("R.P.") ] and a nonstock corporation organized and existing under the law of Maryland.

*See also* R.P. § 11–109(a) ("The affairs of the condominium shall be governed by a council of unit owners which, even if unincorporated, is constituted a legal entity for all purposes. The council of unit owners shall be comprised of all unit owners."). Article V, § 5.2.2. states that "all of the Unit Owners" are members of the Council.

Common Elements "(a) shall consist of all of the Condominium other than Units the legal title to which is held by a person other than the Council, and (b) shall be comprised of the Limited Common Elements and the General Common Elements." Art. III, § 3.3.1 of the Declaration. According to Article VI, § 6.5.2.(a) of the Declaration, "the Council shall maintain, repair and replace all General Common Elements and Limited Common Elements, including all structural repairs and replacements to Limited Common Elements the costs of which ... shall be Common Expenses." *See also* R.P. § 11–108.1 ("Except to the extent otherwise provided by the declaration or bylaws, and subject to § 11–114 of this title, the council of unit owners is responsible for maintenance, repair, and replacement of the common elements, and each unit owner is responsible for maintenance, repair, and replacement of his unit."). The Common Elements are owned by all of the Unit Owners, each of whom share an undivided percentage interest therein. Art. III, § 3.3.4. of the Declaration.

Article II, § 2.2.2. of the By–Laws sets forth the specific powers of the Council. Relevant to this appeal are the following powers:

Without limiting the generality of the foregoing provisions of this Section, the Council shall have all of the following powers:

\* \* \*

(d) subject to the provisions of subsection 2.2.5., **to sue, be sued, complain and defend in any court of law or equity of Maryland or any other jurisdiction;**

\* \* \*

(1) to regulate the use, maintenance, repair, replacement, and modification of Common Elements;

\* \* \* .

**(r) subject to the provisions of subsection 2.2.5, to enforce the implied warranties made to the Council by the Developer under Section 11–131 of the Act.**

\* \* \*

**(t) to perform all of the obligations imposed upon the Condominium under the Homeowners Association Declaration (as defined in the Declaration), and pay any and all amounts coming due thereunder, with all such amounts constituting Common Expenses; and**

(u) generally, to exercise any and all rights which are vested in it, and to do every other act not inconsistent with law which is appropriate to promote and attain the purposes set forth in the Act, the Declaration or these By–Laws.

(Emphasis added).

Article II, § 2.4.10 of the By–Laws provides that "[t]he Board of Directors and the Officers" shall manage "[a]ll of the Council's business and affairs" and shall exercise and perform all of the Council's "rights, powers and duties." Article II, § 2.2.5. of the By–Laws sets forth the responsibility of the Board of Directors regarding legal proceedings. Section 2.2.5.(a) states:

**The Board of Directors shall have the exclusive right to initiate any form of legal proceedings** as it deems necessary and appropriate related to the use, operation or maintenance of the General Common Elements and subject to

any separate rights vested in the Unit Owners, the Limited Common Elements, subject to the following requirements.

(Emphasis added).

"Legal Proceedings," is defined by § 2.2.5.(b) of the By-laws and

**shall mean any form of action or suit,** under the Declaration, or pursuant to the Act or contained in any other statutes, regulations or ordinances or at common law brought by or on behalf of the Council, **including, but not limited to, demands for performance of the Developer's obligations hereunder or under the Act, and shall include the assertion by the Council, through litigation, arbitration, or otherwise, of any claims or actions related to the Common Elements or the Units,** or the retention of an attorney, engineer, architect or other expert for purposes of considering or investigating the possible institution of Legal Proceedings.

(Emphasis added).

Under § 2.2.5.(c), the decision to initiate any Legal Proceeding

**must be made by a resolution duly adopted at a properly noticed Special Membership Meeting of the Council held for such purpose. Such resolution shall require the affirmative vote of Unit Owners representing not less than sixty-six percent (66%) of the total Votes of the Unit Owners present and voting.** Notwithstanding any other provisions of these By-laws, the presence in person or by proxy of Unit Owners whose respective Votes constitute, in the aggregate, fifty percent (50%) of the total number of Votes which are then outstanding shall be required for and shall constitute a quorum for such meetings.

(Emphasis added).

There are two ways in which a Special Membership Meeting may be initiated:

(i) The President or the Board of Directors may at any time call a Special Membership Meeting upon his or its own

initiative, and shall in such event determine the date, time and place thereof.

(ii) The President shall call a Special Membership Meeting upon the Council's receipt, at any time after the first Annual Membership Meeting, of a petition requesting that such Special Membership Meeting be called, stating each intended purpose thereof, and signed by Unit Owners or Proxy Holders having at least twenty-five percent (25%) of the total number of Votes then outstanding. Whenever any such Special Membership Meeting is requested by any such petition, the President shall set a date therefor which is not later than ninety (90) days after the Council's receipt of such petition.

Art. II, § 2.3.3.(b) of the By–Laws.

## Construction of the Condominium and The History of Water Leaks

The facts of the instant appeal are not in dispute, and have already been outlined in a memorandum opinion from a prior lawsuit between the Council and the developer of the Condominium, Questar Homes Avalon Court Six, LLC ("Questar"). For the purposes of consistency and convenience, we adopt and incorporate substantial portions of the factual history as set forth by the Honorable Vicki Ballou–Watts of the Circuit Court for Baltimore County in her memorandum opinion in that case.

Questar is the developer/builder of ... [the] Condominium [ ], consisting of thirty-six (36) residential condominium units in four (4) buildings located in Pikesville, Baltimore County, Maryland. Buildings 1 and 2 are three-story buildings. Buildings 3 and 4 are two-story buildings. Settlements on the sale of the individual units began with the first settlement on April 29, 1998 (Building 1). The first settlement for individual units in Buildings 2, 3 and 4 occurred on March 18, 1999, November 21, 2000 and October 26, 1999, respectively. Settlements on the final unit of each building occurred as follow[s]: Building 1 (November 27, 2000);

Building 2 (June 21, 2000); Building 3 (December 19, 2000) and Building 4 (December 15, 2000).

[Questar] served as the initial director-members of the [C]ondominium's Board of Directors pursuant to the Articles of Incorporation filed with the State Department of Assessments and Taxation on April 6, 1998.

As noted, the entire condominium development consists of thirty-six (36) units. The settlement for the eighteenth and nineteenth units . . . occurred on October 26 and 27, 1999, respectively. Pursuant to [R.P. § 11–109(16) ], a meeting of the council of unit owners shall be held within sixty (60) days from the date that units representing fifty percent of the votes in the [C]ondominium have been conveyed by the developer to the initial purchasers of units.

Incorporating the sixty (60) day grace period to elect officers or a board of directors, the latest that [the Council] assumed control of the [C]ondominium was on or about December 27, 1999. After the election of a board of directors by unit owners, [Questar was] no longer [a] director-member[ ] and control of the [C]ondominium passed to [the Council].

Between 1998–2002, seventeen (17) unit owners reported problems regarding water infiltration primarily through windows. . . .

*      *      *

On January 3, 2002, the elected Board of Directors entered into a Management Agreement with Community Association Management, LLC (herein referred to as "CAM"). Six (6) months later, David Caplan, the CAM property manager, sent a memorandum to all condominium unit owners and residents requesting information regarding the status of any water leaks. The memorandum was dated June 10, 2002. In the 2002 CAM memorandum, unit owners were specifically asked about any past or then existing water leakage "from the outside into (your) unit." They were asked to respond by June 30, 2002, even if the problem was reported and resolved.

Unit owners responding to the 2002 CAM memorandum included:

- *6 Barbican Way*—Reported leaking from windows; and

- *30 Barbican Way*—Reported water leak in utility closet; and

- *35 Barbican Way*—Reported water damaged walls and ceiling[; and]

- *42 Barbican Way*—Reported window leak in kitchen; and

- *44 Barbican Way*—Reported window leak in kitchen; and

- *50 Barbican Way*—Reported a history, beginning in 2002, of a water leak in master bedroom ceiling.

In one response to CAM's memorandum, a unit owner asserted "window leakage in practically every window in our condo" on numerous occasions for the previous four (4) years.

On August 26, 2002, U.S. Inspect, Inc. issued a Replacement Reserve Report which "covered the common elements of the community including building exteriors, concrete walks, curb and gutter and retaining wall." No unit interiors were evaluated and the survey was based upon "a limited visual assessment."

In September 2005, [the Council]'s Board of Directors authorized the commission of a building leakage investigation by Simpson, Gumpertz & Herger ("SGH"). SGH completed a report titled *Building Leakage Investigation, Avalon Court Six Condominiums, Pikesville, MD* which is dated December 1, 2005.

In the *Background Section* on page 1 of the SGH report, the preparer noted that "[t]he **buildings continue to leak at window heads despite past repairs by the original contractor.**" ...

(Some alterations in original) (emphasis in original).

### The Dispute

On August 8, 2006, the Council filed an 11 count complaint against Questar on behalf of the Council and individual unit

owners, seeking recovery for injury and damage to the condominium building, units, and Common Elements from water leakage, seepage, and deterioration that allegedly were caused by defects in design and construction. The counts in the complaint were negligent design (Count 1), negligent construction (Count 2), negligent supervision (Count 3), breach of implied warranty (Count 4), breach of express warranty (Count 5), negligent misrepresentation (Count 6), fraudulent misrepresentation (Count 7), breach of contract of sale (Count 8), violation of Consumer Protection Act (Count 9), breach of fiduciary duty (Count 10), and constructive fraud (Count 11).

On December 6, 2006, Questar filed a motion to dismiss, or in the alternative, for summary judgment, alleging, *inter alia,* that the Council's claims were time barred. A hearing on Questar's motion was held on April 11, 2007, before Judge Ballou–Watts. On June 19, 2007, Judge Ballou–Watts issued a memorandum opinion and order granting Questar's motion for summary judgment, ruling that all of the claims in the Council's complaint were time barred. According to Judge Ballou–Watts, "[p]ursuant to the 'discovery rule,' the three year statute of limitations for all claims (except warranty claims) began to run—*at the latest*—in June 2002, when CAM received responses to its memorandum and not [o]n December 1, 2005 when [the Council] received the SGH Building Leakage Investigation report." (Emphasis added). The Council did not appeal this order, and thus it became a final judgment.

As a result of Judge Ballou–Watts' order, the Council was unable to recover from Questar the costs of correcting the water infiltration problems, as well as other design and construction defects, and was forced to bear such costs that exceeded $1,000,000. The Council obtained a construction loan to cover the cost of the repairs and, in order to repay the loan, mandated that each unit owner pay certain special assessments and an increase of $400 in the monthly condominium fee.

Thereafter, on January 23, 2008, appellants, consisting of 35 of the 36 unit owners, filed a lawsuit against the Council to

recover the monetary damages that they suffered as a result of the Council's negligence. On March 4, 2008, appellants filed an amended complaint alleging that the Council was negligent in (1) failing to timely investigate the water infiltration problems, and (2) failing to bring a lawsuit against the developer within the period of the statute of limitations. Appellants claimed that, as a result of the Council's negligence, they "have suffered, and will continue to suffer, actual monetary damages in excess of Thirty Five Thousand ($35,-000.00) dollars each and have collectively suffered actual monetary damages in excess of One Million dollars ($1,000,-000.00)."

On May 19, 2008, appellants filed a motion for summary judgment, arguing that the Council was negligent, as a matter of law, because the Council "had the sole and exclusive duty, as well as the legal obligation, to investigate and ascertain the reasons and/or sources of the water infiltration problems and proceed to repair said water infiltration problems," as well as "the sole and exclusive duty to bring legal action regarding the water infiltration problems." On May 29, 2008, the Council filed a response to appellant's motion for summary judgment and a cross motion for summary judgment, contending that appellant's complaint was barred by the three year statute of limitations, as they were on notice of the water problems in June of 2002 and thus had until June of 2005 to file a lawsuit. Additionally, the Council argued that it did not have a duty to appellants to file a legal action against Questar.

On July 14, 2008, the circuit court issued a Motions Ruling denying both appellants' and the Council's motions for summary judgment. In its ruling, the circuit court stated, in pertinent part:

From the standpoint of the judge hearing the motion for summary judgment, the decision may not be all that difficult at the circuit court level unless [appellants] prove[ ] to the court there is entitlement to a cause of action against [the Council]. New causes of action should ordinarily be established by the appellate courts of Maryland. Trial judges should not usually establish new causes of action and there-

fore the Plaintiff pays the price to go to Annapolis if there is a doubt as to the existence of an action for negligence against the Council and as to the extent of that duty.

*     *     *

... [Appellants] ha[ve] the responsibility to demonstrate the existence of a duty and the probable recognition of that duty by Maryland appellate courts or this case on this level should end.

(Footnote omitted).

Two months later, on September 19, 2008, the Council filed a Renewed Motion for Summary Judgment, wherein it argued that appellants failed to produce any authority establishing a legal duty on the part of the Council to file a lawsuit on behalf of individual unit owners and that appellants' complaint was time barred. A hearing on the renewed motion was held on April 13, 2009. At the conclusion of the hearing, the court granted the Council's renewed motion for summary judgment.

This timely appeal followed.

### DISCUSSION

Maryland Rule 2–501(f) provides, in relevant part, that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The standard of review on appeal is well settled:

The question of whether the trial court properly granted summary judgment is a question of law and is subject to *de novo* review on appeal. If no material facts are in dispute, we must determine whether summary judgment was correctly entered as a matter of law. On appeal from an order entering summary judgment, we review "only the grounds upon which the trial court relied in granting summary judgment."

*Prop. & Cas. Ins. Guar. Corp. v. Yanni,* 397 Md. 474, 480–81, 919 A.2d 1 (2007) (citations omitted) (quoting *River Walk Apartments, LLC v. Twigg,* 396 Md. 527, 541–42, 914 A.2d 770 (2007)). "If the trial court did not specify the grounds upon which it granted summary judgment, appellate courts assume that the trial court 'carefully considered all of the asserted grounds and determined that all or at least enough of them ... were meritorious.'" *Kimmel v. SAFECO Ins. Co.,* 116 Md.App. 346, 354–55, 696 A.2d 482 (1997) (ellipsis in original) (quoting *Bond v. NIBCO, Inc.,* 96 Md.App. 127, 133, 623 A.2d 731 (1993)).

In the case *sub judice,* it is unclear on which ground the circuit court relied in granting summary judgment in favor of the Council. Therefore, we shall review the circuit court's grant of summary judgment on both grounds asserted by the Council, to wit, (1) there is no legal duty owed by the Council to the unit owners to file a lawsuit against Questar for claims related to the Common Elements, and (2) appellants' claims are barred by the applicable statute of limitations.

## I.

Appellants argue that the circuit court erred in granting summary judgment in favor of the Council, because the Council has a duty to the unit owners to pursue claims against a third party related to the maintenance and repair of the Common Elements. According to appellants, if the Council fails in this duty, the unit owners can pursue litigation against the Council. In support of their position, appellants note that "the law of Maryland, the Declaration[,] and the By–Laws explicitly impose on the Council and the Board of Directors the exclusive duty to maintain and repair the common elements of the Condominium." Appellants also observe that "the By–Laws instill in the Board of Directors of the Council 'the **exclusive** right to initiate any form of legal proceedings ... related to use, operation or maintenance of the [ ] Common Elements.'" (Ellipsis in original). Appellants thus conclude that "[t]he clear corollary between the duty to maintain and repair the common elements, and the exclusive right to

bring legal proceedings in regard to the common elements, is that the Council has a duty to bring legal proceedings in regard to defects with the common elements." Appellants concede that "Maryland courts have not yet addressed unit owners' rights to sue councils for negligently maintaining the common elements," but urge this Court to follow in the footsteps of other jurisdictions, "which have addressed this issue and have [ ] held that unit owners do have rights against councils and associations."

Assuming the existence of such duty, appellants contend that the Council was required to timely file suit against Questar for claims related to the defects in the design, construction, and water infiltration affecting the Common Elements of the Condominium. Appellants assert that, had the Council timely filed a lawsuit against Questar on behalf of appellants and the Condominium, the Council would have prevailed and thus would not have levied special assessments and increased condominium fees on the unit owners. Thus appellants conclude that the circuit court erred in granting summary judgment in favor of the Council.

The Council contends that "Maryland [law] does not recognize a duty on the part of the [Council] to file suit on behalf of individual unit owners." The Council emphasizes the difference between *a right* and *a duty*, and argues that neither Maryland law, the Declaration, nor the By–Laws compels the Council to file suit on behalf of individual unit owners. Indeed, the Council points out that, according to the By–Laws, it may not file suit without "express permission from the individual unit owners." Therefore, the Council concludes that it was under no duty to appellants to file a lawsuit against Questar for damages to the Common Elements.[1]

---

1. The Council further argues that summary judgment was properly granted in its favor, because appellants "failed to show, nor can they show, with any degree of certainty, that the claims asserted in th[e] lawsuit would have been successfully litigated." The argument before the circuit court, however, focused on whether or not the Council owed appellants a duty to file a lawsuit on their behalf against Questar. Without a legal duty, the court would not have proceeded to examine

We have found no Maryland case involving the right of individual unit owners to initiate a negligence action against their condominium association for failing to maintain the common elements. In their brief and reply brief, appellants discuss three cases, which this Court finds instructive: *Queen's Grant Villas Horizontal Property Regimes I–V v. Daniel International Corp.*, 286 S.C. 555, 335 S.E.2d 365 (1985); *Murphy v. Yacht Cove Homeowners Ass'n*, 289 S.C. 367, 345 S.E.2d 709 (1986); and *Siller v. Hartz Mountain Associates*, 93 N.J. 370, 461 A.2d 568 (1983).

*Queen's Grant Villas* involved an action brought by the association against the developer "for alleged defects in the construction of the common elements of a condominium project," which the lower court disposed of on summary judgment for lack of standing. 335 S.E.2d at 365. The Supreme Court of South Carolina reversed, holding that the "property regime ha[d] standing to bring an action for construction defects in common elements that the regime ha[d] the duty to maintain," particularly when "master deeds and the by-laws" charged the association with "the obligation to maintain the common elements." *Id.* at 366. The Court went on to state, albeit in dicta: *"Should the Regime not uphold its duty to pursue a recovery for any alleged construction defects in the common elements which it maintains, it may be liable to the homeowners for its omissions."* *Id.* (emphasis added).

One year later, in *Murphy,* the Supreme Court of South Carolina held "that a member of a condominium association" had standing to "bring an action in contract or tort against the association." 345 S.E.2d at 710. In that case, joint owners of a condominium unit brought a negligence action against Yacht Cove Homeowner's Association ("the Association"), an unincorporated condominium association, for failure to maintain the common elements after one of the owners suffered physi-

---

the other elements in a cause of action for tort liability, namely, breach of that duty, proximate cause, and damages. Therefore, any argument connected to the outcome of the underlying case between the Council and Questar is premature.

cal injury in the common area. *Id.* at 709. The Association raised imputed negligence as a defense, arguing that, as members of an unincorporated association, each member is both a principal and agent for the other members of the Association, and thus the negligence of each member must be imputed to every other member. *Id.* Accordingly, the Association concluded that the joint owners "should be precluded from maintaining an action for negligence against the Association." *Id.*

The Supreme Court of South Carolina disagreed with the Association, reasoning that, "since the association can sue a member for failure to adhere to the bylaws, rules, and regulations, a member necessarily can sue the association for this same failure." *Id.* at 710. In so holding, the Court relied on its opinion in *Queen's Grant Villas,* stating:

> This Court has addressed the question of whether a property regime has standing to sue for defects in the common elements which it has a duty to maintain. *Queen's Grant Villas Horizontal Property Regimes I–V v. Daniel International Corporation,* 286 S.C. 555, 335 S.E.2d 365 (1985); *Roundtree Villas Association v. 4701 Kings Corporation,* 282 S.C. 415, 321 S.E.2d 46 (1984). **We have noted that "[s]hould the Regime not uphold its duty to pursue a recovery for any alleged construction defects in the common elements which it maintains, it may be liable to the homeowners for its omissions."** *Queen's Grant,* **286 S.C. at 556, 335 S.E.2d at 366. This necessarily implies that an association can be sued by the unit owners for its failure to discharge its duties.**

*Murphy,* 345 S.E.2d at 710 (alterations in original) (emphasis added).

Although *Queen's Grant Villas* and *Murphy* focus on the issue of standing, both cases endorse the proposition that a condominium association has a "*duty* to pursue a recovery for any alleged construction defects in the common elements which it maintains," *Queen's Grant Villas,* 335 S.E.2d at 366 (emphasis added), and that, if they fail to do so, individual unit

owners have a cause of action against the association for its negligence. Such a proposition is pertinent to the instant case, as appellants initiated a lawsuit against the Council for negligence in failing to bring a legal action against Questar prior to the expiration of the applicable statute of limitations.

*Siller* is more factually apposite to the facts of the case *sub judice.* In *Siller,* the plaintiffs, who were owners of condo units in the Harmon Cove community, brought suit against the developer and two associations, Harmon Cove I Condominium Association, Inc. ("the Association") and Harmon Cove Recreation Association, Inc. ("the Recreation Association") (collectively "the Associations"). 461 A.2d at 569. "The suit related to alleged defects in and about the units and common areas and facilities and to a settlement that the two associations were prepared to effectuate on behalf of all unit owners, including plaintiffs, with the [d]eveloper." *Id.*

Relevant to the instant appeal is the fourth count in the plaintiffs' complaint, which was directed solely against the Associations. *Id.* at 570. Apparently, the Association's board of directors designated a Legal Action Committee to investigate claims against the developer for (1) construction and design and (2) misrepresentation and fraud. *Id.* at 575. The Committee reported several deficiencies attributable to the developer and recommended engaging an attorney to institute litigation, which the board of directors initially adopted. *Id.* "[S]hortly thereafter the board rescinded the action engaging that attorney and instead utilized the Association's general counsel in its negotiations with the [d]eveloper." *Id.* The negotiated settlement provided that the developer would pay the Association and the Recreation Association $400,000, and that the developer would receive "a general release except for 'repair and replacement' of underground utility breaks" on part of the common elements for a period of three years. *Id.* The plaintiffs alleged in their fourth count

that settlement negotiations between the Association, the Recreation Association and the [d]eveloper with respect to claims arising from the design and building of the "condominiums and the common elements" were near comple-

tion. . . . This count, as subsequently amended by plaintiffs, charged that the proposed settlement was unreasonable, unlawful, and inadequate, that the Associations had breached their fiduciary duties and responsibilities to plaintiffs, and that the [d]eveloper, which at one time properly controlled the Associations, had continued unlawfully to exercise control and influence over the Associations.

*Id.* at 570 (footnote omitted).

The Supreme Court of New Jersey first interpreted New Jersey's Condominium Act to hold that an association "may sue to protect the rights and interests of the unit owners in the common elements." *Id.* at 573. In discussing whether the association had the "exclusive right to maintain those actions," the Court reasoned:

**Obviously the unit owner has an interest in claims against the developer arising out of damages to or defects in the common elements. However, the association has been charged with and delegated the primary responsibility to protect those interests.** "The association . . . shall be responsible for the . . . maintenance, repair, replacement, cleaning, and sanitation of the common elements." **So long as it carries out those functions and duties, the unit owners may not pursue individual claims for damages to or defects in the common elements predicated upon their tenant in common interest.** The Condominium Act contemplates as much. **The association, not the individual unit owner, may maintain and repair the common elements.**

*Id.* at 573 (ellipses in original) (citations omitted) (emphasis added). The Court, however, clarified that

**the association's primary right to sue does not diminish any claim that the unit owner may have against the association. The association's board of directors, trustees or other governing body have a fiduciary relationship to the unit owners, comparable to the obligation that a board of directors of a corporation owes to its stockholders.** Acts of the governing body should be prop-

erly authorized. Fraud, self-dealing or unconscionable conduct at the very least should be subject to exposure and relief.

*Id.* at 574 (emphasis added).

In applying the above principles to the facts of *Siller,* the Court held that the individual unit owners had the right to sue the Associations for obtaining an inadequate or unreasonable settlement of the claims against the developer for defects in the design and construction of the condominium buildings and common elements. *Id.* at 570, 575. A necessary predicate to this holding is a duty on the part of the Associations to pursue a recovery against the developer for damages caused by the defective design or construction of the common elements. Therefore, *Siller,* along with *Queen's Grant Villas* and *Murphy,* supports the principle that a condominium association, which has the obligation to maintain and repair the common elements and the right to bring suit thereon, has the "duty to pursue a recovery for any alleged construction defects in the common elements which [the association] maintains," *see Queen's Grant Villas,* 335 S.E.2d at 366; *Murphy,* 345 S.E.2d at 710, and the individual unit owners have a cause of action against the association when the association breaches that duty by failing to pursue the claim altogether or to negligently pursue such claim.

▉ In the instant case, the Declaration sets forth that appellants have a property interest in the Common Elements of the Condominium. Appellants, however, do not possess the authority to act in regard to the Common Elements; that authority lies exclusively with the Council. The Declaration provides: "[T]he Council shall maintain, repair and replace all General Common Elements and Limited Common Elements." Art. VI, § 6.5.2.(a) of the Declaration. The By–Laws also delegate to the Board of Directors "the exclusive right to initiate any form of legal proceedings," Art. II, § 2.2.5.(a) of the By–Laws, which includes, but is not limited to, "demands for performance of the Developer's obligations" and "any claims or actions related to the Common Elements," Art. II,

§ 2.2.5.(b) of the By–Laws. By virtue of the Council's exclusive control over the Common Elements of which appellants, as individual unit owners, have no control, a duty arises in the Council to act in regards to the Common Elements on behalf of the individual unit owners. Therefore, we hold that the duty to "maintain, repair and replace" the Common Elements, together with the exclusive right to initiate litigation regarding the Common Elements, creates a concomitant obligation on the part of the Council to pursue recovery from Questar on behalf of appellants for damage to the Common Elements caused by Questar's negligence, breach of contract, or violation of any applicable law.

The Council, nevertheless, contends that appellants are attempting to "turn back the clock [ ] or now by inventing [a] new cause[ ] of action" against the Council for claims appellants should have filed individually against Questar. In other words, the Council is arguing that, because the statute of limitations has expired for appellants to file lawsuits against Questar, appellants are attempting to redress their alleged injury by filing a lawsuit against the Council. The Council's argument is without merit.

It is clear that in their amended complaint, appellants seek recovery for only the increased annual and special assessments that they were forced to pay for the repair of the damage to the Common Elements. The By–Laws provide that the annual assessments and special assessments can only be used for Common Expenses for the Common Elements. Specifically, § 3.1.1.(b) of the By–Laws provides:

> (b) The proceeds of the Annual Assessments may be used by the Council to defray any Common Expenses. The proceeds of any Special Assessments shall be used to defray any Common Expenses incurred by the Council either in the construction, reconstruction, repair or replacement of any of the Common Elements, or any Council Property, or for unreported Common Expenses.

As previously stated, Common Expenses are the costs of maintenance, repair, and replacement of the Common Ele-

ments. *See* Art. VI § 6.5.2.(a) of the Declaration. Appellants' claims thus are related to the Common Elements and Common Expenses, not to any damage sustained by appellants to their individual units.

Finally, the Council argues that it owed no duty to appellants to file suit on their behalf against Questar, because the By–Laws provide that the Council may not file suit "absent express permission from the individual unit owners." Section 2.2.5.(c) of the By–Laws requires the unit owners of the Condominium to vote at a Special Membership Meeting on whether to bring legal proceedings in regards to the Common Elements. The Council appears to contend that, because the unit owners must vote to initiate legal proceedings, the Council is somehow relieved of its responsibility to properly pursue claims against Questar. The Council is mistaken.

Under Art. II, § 2.3.3.(b)(i) of the By–Laws, the President of the Board of Directors of the Council may at any time call a Special Membership Meeting "upon his or its own initiative." [2] Moreover, because the Council did in fact file a lawsuit against Questar relating to the Common Elements, a Special Membership Meeting must have been held, and the unit owners must have approved the pursuit of claims against Questar. There is nothing in the record to indicate when this meeting was held or how long after the meeting was held suit was filed by the Council against Questar. It is undisputed, however, that the Council delayed the investigation of the water infiltration from June 30, 2002, when it received reports of the water leakage from the unit owners, until it authorized the leakage investigation in September of 2005. Therefore, the Council's duty to pursue recovery from Questar for defective design and/or construction to the Common Elements was not obviated by the requirement of approval from the unit owners for the initiation of legal action by the Board of Directors.

---

**2.** A Special Membership Meeting may also be called upon receipt by the Council of a petition signed by at least 25% of the unit owners. Art. II § 2.3.3.(b)(ii).

## II.

■ Appellants also argue that the circuit court erred in finding that their complaint was barred by the statute of limitations. According to appellants, their claims against the Council were for "the Council's failure to properly secure the repair of the common elements," and thus the statute of limitations began to run when Judge Ballou–Watts issued her order on June 19, 2007. At that time, appellants discovered that the Council "failed to properly maintain and repair the common elements of the Condominium[ ] and protect the Unit Owners by filing a timely and proper action against [Questar]."

The Council responds that "[a]ppellants' complaint is time barred by the statute of limitations because the individual unit owners were on notice of water problems in the units as of June of 2002," but did not file their suit until January 23, 2008, after the three year statute of limitations had expired. According to the Council, upon discovering water seepage into their individual units due to the structural defects in the Common Elements, appellants should have pursued legal action against the Council for failing to maintain the Common Elements; the Council, in turn, would have pursued legal action against Questar. Instead, the Council argues, appellants relied on the Council to protect their rights, thus permitting the statute of limitations to expire.

Maryland Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." The Court of Appeals, in *Frederick Road Ltd. Partnership v. Brown & Sturm,* 360 Md. 76, 756 A.2d 963 (2000), explained that Maryland employs

the discovery rule to determine the date of accrual. The discovery rule tolls the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury. Thus,

before an action is said to have accrued, a plaintiff must have notice of the nature and cause of his or her injury.

*Id.* at 95–96, 756 A.2d 963 (citations omitted).

In the case *sub judice,* appellants sought recovery for the Council's failure to properly pursue a legal remedy against Questar, not for Questar's deficient design or construction of the Condominium and Common Elements. Indeed, under Art. II, § 2.2.5.(a) of the By–Laws, the "exclusive right to initiate any form of legal proceedings" related to the Common Elements is vested in the Board of Directors of the Council, not appellants. Thus the earliest appellants' cause of action accrued was in June of 2005, when, according to Judge Ballou–Watts' memorandum opinion, the three-year statute of limitations expired, thus precluding any recovery by the Council from Questar. Appellants filed their complaint against the Council on January 23, 2008, well within the three year statute of limitations that would have expired in June of 2008. Therefore, we conclude that appellants' complaint was not time barred.

In sum, we hold that the Council had a duty to appellants to properly pursue any claims against Questar arising out of defects in design and/or construction of the Common Elements, and a breach of that duty gave rise to a cause of action for negligence, which appellants filed within the applicable statute of limitations. Accordingly, we reverse the judgment of the circuit court and remand for further proceedings not inconsistent with this opinion.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION; APPELLEE TO PAY COSTS.**